Everett FRYER, Plaintiff-Respondent,

v.

C. Richard CONANT, individually and C. Richard
Conant and Maxine T. Conant, husband and wife, in
relation to their marital and community property,
Defendants-Appellants.

Court of Appeals

*No. 90-1102. Submitted on briefs November 6, 1990.—Decided
December 18, 1990.*

(Also reported in 465 N.W.2d 517.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *William J. Weigel* of *Weigel Law Firm* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *M.J. Schmidt* and *John A. Zodrow* of *Schmidt, Martz & Smith, Ltd.* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. This is a suit to recover a real estate commission that Everett Fryer claims he is owed as the result of the sale of commercial property. The trial court found that Fryer fulfilled his obligations under the listing contract. The defendants appeal. We affirm.

I.

Fryer is a licensed real estate broker. On November 20, 1986, he and C. Richard Conant executed a listing contract for commercial property. The contract gave Fryer "the sole and exclusive right to procure a purchaser" for the property described therein, which, according to an affidavit submitted by Conant to the trial court, was owned by Conant's wife. By its terms, the listing contract was to run from December 10, 1986, through midnight on April 1, 1987, and provided that:

> If the property . . . is sold . . . or optioned within six months after the expiration of this contract to any person . . . with whom [Fryer] . . . negotiated prior to the expiration of this contract, or to whom [Fryer] . . . personally exhibited by showing the property prior to the expiration of this contract and in either case whose name [Fryer] has submitted to [Conant] in writing . . . by depositing, postage prepaid, in the United States mails, not later than 24 hours after the expiration of this contract, [Conant] agrees to pay [Fryer] the commission set forth in this contract.

By letter dated March 30, 1987, which Fryer sent to Conant on March 29, 1987, Fryer advised Conant that Paul Schmitz was such a person. Schmitz ran a company

called Global Manufacturing, and he purchased the Conant building at a June 30, 1988, closing.

At the trial, Fryer testified, without objection, that Schmitz told him that he was interested in purchasing the Conant building because the property from which he ran his business was condemned by the state, but that "he couldn't do it at the present time because he was going through a divorce, and did not want his wife to have a portion of the building . . .." According to Fryer's testimony, again without objection, Schmitz told him that "he was trying to set up a lease [with respect to the Conant building] until the divorce was cleared up and then he was going to purchase the building."

By letter dated June 5, 1987, Conant informed Fryer that he had given Global "an option to lease the premises starting in July, 1987," and that Global "will receive a 6 month option to purchase."[1] Conant's letter also told Fryer that:

> I was assured [sic] they would further exercise their option to purchase. If all this happens (and I feel it will) you will receive at the closing of the sale a 5% commission. If they only exercise their option to lease and do not further exercise their option to purchase then I will relist the property (for sale) with you.

(Underlining in original.) According to Fryer, Conant told him that the arrangement with Schmitz "was a done deal" and that he should not "spend anymore time or

---

[1]Conant testified that a written option to purchase had been prepared but was not executed because Schmitz's attorney was concerned that it might give Schmitz's wife an interest in the property prior to the divorce. In an affidavit that is part of the record, Schmitz indicates that he "understood I had the option to purchase the property on or before December 31, 1987."

money trying to find anybody else to purchase it, because Mr. Schmitz was going to purchase it when his divorce was done." Schmitz testified that he had wanted to delay taking title to Conant's property until his pending divorce was completed.

As a result of Schmitz's arrangements with Conant, the Conant building was extensively renovated in the summer of 1987. Schmitz told Fryer that the renovations cost approximately $50,000, and testified that the renovations were paid for by the state as part of what the state gave him for his property.

Schmitz leased the Conant building for thirty-six months commencing July 1, 1987. He took possession in September of 1987, after the building had been brought up to code as a result of the renovations. On June 30, 1988, about a month after his divorce, Schmitz purchased the building for $111,500 in cash, and the thirty-six month lease was terminated.

In an oral decision from the bench, the trial court concluded that Fryer was entitled to his commission, and found the following facts:

> —that Fryer had procured Schmitz as a purchaser "ready, willing, and able to buy" during the listing contract's term, "except for the fact that there was concern about the marital property law and what would happen if the property were purchased before the divorce became final";
> —that "as far as Mr. Fryer was concerned, he had fulfilled his part of the agreement and all that had to occur was the sale";
> —that "Mr. Schmitz intended to purchase the property all along and would have purchased the property, except for the concern about the divorce, and as soon as that was resolved, did exercise his option to purchase the property."

743

## II.

A real estate broker is entitled to a commission when he or she has procured a purchaser who is ready, willing, and able to buy according to the terms in the listing contract. *Winston v. Minkin,* 63 Wis. 2d 46, 51, 216 N.W.2d 38, 41 (1974). This happens "when there is a meeting of the minds of the principal and the customer produced by the broker." *Ibid.* Indeed, unless the listing contract specifically requires it, "final consummation of the sale" is not required. *Ibid.; Kruger v. Wesner,* 274 Wis. 40, 44–46, 79 N.W.2d 354, 356–358 (1956). Whether a buyer is ready, willing, and able to purchase is a question of fact to which we owe great deference. Thus, a trial court's finding that a broker procured a purchaser "will not be set aside on appeal unless it is contrary to the great weight and clear preponderance of the evidence," or, if the facts are undisputed, is based on "an erroneous conclusion of law." *See Mansfield v. Smith,* 88 Wis. 2d 575, 585, 277 N.W.2d 740, 745 (1979); *see also* Rule 805.17(2), Stats. (Findings of fact in a case tried to the court "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").[2] Additionally, we are bound by the reasonable inferences that the trial court draws from the credible evidence. *See Cogswell v. Robertshaw Controls Co.,* 87 Wis. 2d 243, 250, 274 N.W.2d 647, 650 (1979).

---

[2]The "clearly erroneous" test and the "contrary to the great weight and clear preponderance of the evidence" test are "essentially the same." *Noll v. Dimiceli's Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

The trial court determined that there was the requisite meeting of the minds between Conant and Schmitz regarding the property's sale within the time limit imposed by the brokerage contract, reasoning, in essence, that although the sale was initially structured as a lease because of a matter extraneous to the purchase (the timing of Schmitz's divorce), the sale was, using Conant's phrase quoted by Fryer, a "done deal" by the time of Conant's June 5, 1987, letter to Fryer, which was well within the six-month period subsequent to April 1, 1987. Thus, it is highly improbable that Schmitz would have spent $50,000 on the property's renovation unless the sale was a fact in all but name.[3] As a legal proposition, the divorce, in doubt only as to its timing, was not a condition to the sale. *See* Restatement (Second) of Contracts sec. 224 (1979) ("A condition is an event, *not certain to occur,* which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." (emphasis added)); *cf. Woodland Realty, Inc. v. Winzenried,* 82 Wis. 2d 218, 223-224, 262 N.W.2d 106, 108-109 (1978) (The financing contingency was a condition to sale because it was uncertain whether the contingency would be satisfied.). Rather, the divorce merely controlled when the sale would be formalized, and

---

[3]Although Schmitz testified that he was unable to purchase the property at the time of the lease because of difficulty in obtaining financing in addition to the problems created by his pending divorce, the trial court was free not to credit that testimony, especially in light of later testimony that he paid cash for the building and was able to borrow the money he needed "from personal friends." The trial court was also free not to credit Conant's testimony that in the Spring of 1988 he was looking for other potential buyers because, in his words, Schmitz "started to look like less and less of a buyer every time I talked with him."

Fryer did not lose the right to his commission because the sale's formal consummation was postponed until after Schmitz's divorce and actually did not take place until June 30, 1988. Since the parties do not dispute the amount of the commission, the judgment is affirmed.[4]

*By the Court.*—Judgment affirmed.

---

[4]In a passing and wholly undeveloped argument, the Conants contend that the judgment against Mrs. Conant "as to her marital property" should be reversed because she did not sign the listing contract. We will not consider an argument that is inadequately briefed. *See In re Estate of Balkus,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985).