JAUQUET LUMBER COMPANY, INC., Plaintiff-Respondent,

v.

KOLBE & KOLBE MILLWORK COMPANY, INC., Defendant-Appellant.

Court of Appeals

*No. 91-0082. Oral argument August 28, 1991.—Decided September 24, 1991.*

(Also reported in 476 N.W.2d 305.)

690

693

694

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard J. Weber* and *Jerry W. Slater,* and orally argued by *Richard J. Weber, Kelley, Weber, Pietz & Slater, S.C.,* Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of and orally argued by *Frederick J. Mohr, Frederick J. Mohr, S.C.,* Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Kolbe & Kolbe Millwork Company, Inc., appeals a judgment in the amount of $180,563.03 awarded to Jauquet Lumber Company based upon the trial court's finding that Kolbe engaged in unfair competition in violation of sec. 133.05, Stats.

Kolbe raises three issues on appeal. First, Kolbe contends that there was insufficient evidence to support the trial court's finding that the discount offered by Kolbe to Stock Lumber Company was secret. Next, Kolbe contends that the trial court erred by failing to make a determination whether the discount was unearned. Finally, Kolbe contends that the court erred by awarding damages to Jauquet because there was insufficient evidence to support its award based upon lost profits and the court improperly applied a rule of automatic damages in determining the amount of the damage award.

We conclude that: (1) there was sufficient evidence to support the court's finding that the discount offered was secret; (2) the court erred by failing to address the question as to whether the discount was unearned; (3) there was sufficient evidence to support the trial court's award of damages in the amount of $36,600 as lost profits based on the 4% additional cost Jauquet incurred on

purchases it made from Kolbe; and (4) there is not sufficient evidence to support a further award of lost profits. Therefore, we affirm in part, reverse in part and remand to the court for a determination as to whether the discount granted to Stock was unearned. We also direct the trial court, if judgment is entered against Kolbe, to reduce the damage award to Jauquet to $36,600, to be tripled under the provisions of sec. 133.18(1)(a), Stats.

Kolbe is a manufacturer of window products located in Wausau, Wisconsin. It distributes its windows through various dealers including several dealers in the Green Bay area. Stock and Jauquet are two of the Green Bay area Kolbe dealers. There was testimony that Stock advertises Kolbe products quite extensively. It not only devotes one-third of its showroom to Kolbe products, but participates in the annual Brown County Home and Garden show with one-half of its booth devoted to Kolbe products. It also engages in other advertising activities that mention Kolbe products along with other products that Stock sells. Jauquet's advertising of Kolbe products is not as extensive as Stock's; however, it does have various Kolbe displays in its showroom and purchases a telephone directory ad that mentions Kolbe products.

In the competitive Green Bay marketplace, all dealers bought products from Kolbe at a 50% discount off the retail list price until Stock negotiated a change from 50% to 54% in February 1984. There was testimony that Kolbe told Stock that it was to take on the additional duty of servicing customer complaints on Kolbe products when it received the 54% discount.

Therefore, from February 1984 until November 1987, Stock purchased Kolbe products at a discount of 54% off list price while Jauquet purchased the same products at a 50% discount off list price. At various times during these three years, James Jauquet

approached Ed Wendt, one of Kolbe's sales representatives, and inquired whether Stock was receiving a better discount than Jauquet. Despite conflicting evidence, the trial court found that although Stock was receiving a better discount, Wendt assured Jauquet that Stock was not receiving a better discount. Additionally, Jauquet was never told that a 54% discount rate was available on the terms and conditions given to Stock, and the availability of this rate was not publicized in any fashion to any dealer in the Green Bay area besides Stock.

Ultimately, Jauquet confronted Wendt with a story about a window project on which both Stock and Jauquet were bidding. Jauquet told Wendt that it had added only 5% to the cost of its windows, yet Stock still outbid them by 5%. Wendt finally admitted that Stock was getting a better discount than Jauquet. Jauquet then approached Kolbe management about the issue. In response, Kolbe extended the 54% discount to Jauquet with no conditions attached.

The trial court found that Kolbe violated sec. 133.05, Stats., on the ground that it had extended a secret discount to one dealer that was not extended to other dealers on the same terms and conditions.

Kolbe first contends that the trial court erroneously concluded that the discount Kolbe gave to Stock was secret. Whether the discount was "secret" within the meaning of sec. 133.05, Stats., is a mixed question of fact and law. The trial court must first make findings of fact from the conflicting testimony, and then apply those facts to the statute. We will not upset a trial court's findings of fact unless they are clearly erroneous. *Fryer v. Conant*, 159 Wis. 2d 739, 744, 465 N.W.2d 517, 519–20 (Ct. App. 1990). The interpretation of a statute and its application to a particular set of facts present questions

of law that we review de novo. *Wilson v. Waukesha County,* 157 Wis. 2d 790, 794, 460 N.W.2d 830, 832 (Ct. App. 1990).

■

Our first inquiry, therefore, is whether the facts found by the trial court are clearly erroneous. There was conflicting testimony whether Wendt deceived Jauquet about the existence of the 54% discount rate. Where there is conflicting evidence, the trial court is the ultimate arbiter of the witness' credibility. *Gehr v. City of Sheboygan,* 81 Wis. 2d 117, 122, 260 N.W.2d 30, 33 (1977). Jauquet witnesses testified to the fact that Kolbe's salesman, Wendt, knew about the difference between Stock's and Jauquet's discounts, yet told Jauquet it was receiving the same discount as Stock when in fact it was not. The trial court's finding that Wendt deceived Jauquet regarding the Stock discount, therefore, is not clearly erroneous. Moreover, there is uncontroverted testimony from Wendt himself that if Jauquet had directly asked him about the 54% discount, he would not have disclosed its existence nor the terms and conditions on which Jauquet could obtain it. The evidence that Kolbe did not in any fashion publicize the 54% discount on the terms and conditions that Stock was receiving, to any other Green Bay area dealer, is also undisputed.

■

Our next inquiry is whether the foregoing facts are sufficient to constitute a "secret" as that term is used in sec. 133.05, Stats. Because the word secret is not defined in sec. 133.05, we give it its ordinary and accepted meaning. *Wilson,* 157 Wis. 2d at 795, 460 N.W.2d at 832. This meaning may be ascertained from a recognized dictionary. *Id. Webster's Third New International Dictionary*

698

2052 (Unabr. 1976), defines secret as follows: "Secret. [K]ept from knowledge or view; concealed, hidden."

Because the record discloses that Kolbe failed to tell Jauquet that a 54% discount was available on the terms and conditions given to Stock, did not publicize the existence of the 54% discount, and affirmatively misrepresented the existence of such a discount to Jauquet, we conclude that the discount Kolbe gave to Stock was a "secret" as that term is used in sec. 133.05, Stats.

Kolbe also argues that the trial court erred because it did not determine whether the discount given to Stock was unearned as required under sec. 133.05, Stats. Section 133.05 provides:

> Secret rebates; unfair trade practices. (1) The secret payment or allowance of rebates, refunds, commissions or unearned discounts, whether in the form of money or otherwise, or the secret extension to certain purchasers of special services or privileges not extended to all purchasers purchasing upon like terms and conditions, such payment, allowance or extension injuring or tending to injure a competitor or destroying or tending to destroy competition, is an unfair trade practice and is prohibited.

Kolbe contends that the statute requires a discount to be both secret and unearned before it is an unfair trade practice.

The parties agree that the trial court found that Kolbe violated sec. 133.05, Stats., because it extended a "secret . . . discount" to Stock which was "not extended to all purchasers purchasing upon like terms and conditions." The trial court decided it did not matter under the statute whether the discount was earned. In addition it found that the phrase "not extended to all purchasers

purchasing upon like terms and conditions" modified "discounts."

■

We interpret a statute without deference to the trial court. *See Wilson,* 157 Wis. 2d at 794, 460 N.W.2d at 832. The unambiguous language of the statute prohibits "the secret payment or allowance of . . . unearned discounts." The trial court's reading of the statute completely eliminates the "unearned" requirement, rendering the word "unearned" superfluous. "[I]t is a basic rule of statutory construction that . . . effect is to be given, if possible, to each and every word, clause and sentence in the statute, and a construction that would result in any portion of [the] statute being superfluous should be avoided wherever possible." *Columbia County v. Bylewski,* 94 Wis. 2d 153, 164, 288 N.W.2d 129, 135 (1980). Because the unambiguous language of this statute requires that a discount be both secret and unearned before a statutory violation can be found, we conclude that the trial court erred by holding that it need not address the issue of whether the discount was earned or unearned.

■

Further, we conclude that the "not extended" phrase does not modify "discounts." For the trial court's reading to be correct there would have to be a comma inserted between the phrase "the secret extension to certain purchasers of special privileges" and the "not extended" phrase. Because there is no comma, we conclude that the "not extended" phrase modifies only the "special services and privileges" clause preceding it and not "discounts."[1] Therefore, we conclude that this stat-

[1]We do not determine whether a discount is a special service or privilege which if not extended to other purchasers violates sec.

ute is violated when a discount, both secret and unearned, tends to injure or injures competition.

Jauquet argues that Stock's discount was unearned as a matter of law. Jauquet contends that discounts that compensate for expenses incurred for advertising a manufacturer's products are unearned per se. Jauquet does not provide any law upon which we must base such a conclusion, nor does it provide any compelling policy reason to reach such a conclusion.

■ Because our statute was designed to accomplish the same goals as the federal antitrust laws, we conclude that an "earned" discount under sec. 133.05, Stats., is similar in nature to the federal concept of a functional discount. *See Independent Milk Producers Co-op v. Stoffel,* 102 Wis. 2d 1, 6-7, 298 N.W.2d 102, 104 (Ct. App. 1980). "A functional discount is a discount given to a purchaser based on its role in the supplier's distributive system, reflecting, at least in a generalized sense, the services performed by the purchaser for the supplier." *Texaco Inc. v. Hasbrouck,* 110 S. Ct. 2535, 2542 n.11 (1990) (citation omitted). The Court further explains: "[a]t the least, a functional discount that constitutes a reasonable reimbursement for the purchasers' actual marketing functions will not violate the Act." *Id.* at 2550.

Thus, for Stock's discount to qualify as earned, it must compensate for a service performed at Kolbe's request. This service must be one that would ordinarily be performed by Kolbe, and the 4% discount must be a reasonable reimbursement for that service. If Stock performed the service gratuitously, the discount is unearned. Likewise, if Stock advertised Kolbe windows primarily to promote Stock and the advertisements only

133.05, Stats., because the case was not tried or argued on this theory.

701

peripherally benefitted Kolbe, the discount is unearned. Moreover, a discount for a service performed on behalf of Kolbe that does not reasonably reimburse Stock for the service performed is unearned.

Therefore, whether a particular discount is unearned requires findings of fact. Because the trial court determined that it need not make a determination on the issue of whether the discount was unearned, it did not make these findings of fact. We do not make findings of fact where, as here, the facts are disputed. *Wurtz v. Fleischman*, 97 Wis. 2d 100, 108, 293 N.W.2d 155, 159 (1980). Therefore, we cannot say as a matter of law that the discount extended to Stock was unearned.

For the same reasons, we cannot accept Kolbe's position that as a matter of law the extra discount given to Stock was a "functional discount" earned by Stock as a result of its added duty to service customer complaints and its activities promoting Kolbe products. Issues of fact exist as to whether the promotional activities engaged in by Stock were the type of activities ordinarily performed by Kolbe, whether the discount was proportionate to the cost of those activities, and whether this discount was intended by the parties to compensate for those services. These issues are to be resolved by the trier of fact, not by this court on appeal.

The parties have agreed that in the event we reach the conclusion that the court erred by failing to consider whether the discount offered to Stock was earned, and if we conclude the issue cannot be resolved as a matter of law, we should remand to the trial court for an evidentiary hearing on this question. The trial court should then make a determination as to whether the discount

was unearned based upon the evidence adduced at trial and the evidence from the additional hearing to be held upon remand. We accept this agreement and, accordingly, remand the matter to the trial court for an evidentiary hearing on this question.

Kolbe also asserts that the damage award in this case cannot be upheld. First, Kolbe argues that the trial court improperly applied a rule of automatic damages in determining the damage award. Second, Kolbe contends that there is no evidence in the record to award Jauquet damages for lost profits based upon the theory that it lost market share in the Green Bay area because of the price differential.

Whether the trial court applied a proper legal standard in determining damages is a question of law that we review de novo. Findings of fact made by the trial court with regard to damages will not be upset by us unless they are clearly erroneous. *Fryer,* 159 Wis. 2d at 744, 465 N.W.2d at 519–20.

The trial court awarded Jauquet $36,600, as lost profits, based on the 4% price differential between Stock and Jauquet on all purchases Jauquet made from Kolbe during the time period in which the differential was in existence. Kolbe contends this award of damages is an application of the automatic damage rule declared invalid in *J. Truett Payne Co. v. Chrysler Motors,* 451 U.S. 557 (1981).

In *J. Truett Payne,* the plaintiff contended that once a violation of the federal price discrimination statute was found, he was automatically entitled to the amount of the discrimination. The Court rejected this argument stating that the plaintiff must not only prove a violation of the statute, he must also prove an "actual injury attributable to something the antitrust laws were

designed to prevent." *Id.* at 562. Once the plaintiff demonstrates injury he must then prove the amount of damages he suffered. The Court, however, did not say that the amount of the price discrimination will never equal the amount of injury suffered by the plaintiff.

As under the Federal statute, Wisconsin's law requires the plaintiff to demonstrate actual injury. Section 133.18, Stats., provides that "any person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefor and shall recover threefold the damages sustained by the person . . .." Once actual injury is demonstrated, the plaintiff must prove the amount of damages he suffered due to this injury. Therefore, we agree with Kolbe that an automatic calculation of damages in the amount of the price discrimination is not authorized by sec. 133.18.

However, 133.18, Stats., does not preclude a finding that the plaintiff's lost profits are equal to the amount of the price discrimination if he provides proof of injury and the amount of damages. Here, the trial court found that Jauquet suffered injury under sec. 133.18, and that this injury was in the amount of $36,600. We will uphold these findings unless they are clearly erroneous.

There is evidence in the record demonstrating Jauquet's injury. Jauquet was placed in an unfair bidding posture relative to its competitors in a highly competitive market, and received lower profits as a result of paying higher costs for Kolbe's product. Moreover, there is evidence to demonstrate that the amount of injury was $36,600. The record supports findings that the Green Bay market in which Jauquet participates is extremely competitive and that Jauquet began receiving the addi-

tional 4% discount as soon as it confronted Kolbe with its knowledge that Stock was receiving a better discount than it was. Kolbe extended the additional 4% discount to Jauquet with no further conditions attached. Jauquet also produced evidence of the actual purchases it made at the 50% rate while Stock was purchasing at a 54% rate. The fact that Jauquet's cost did not increase with receipt of the additional 4% discount permitted the court to find that if Jauquet had received the discount at the same time that Stock did, it would have had an additional 4% profit on every Kolbe product it sold. Thus, the record supports the trial court's conclusion that $36,600 was the amount of injury suffered by Jauquet.

In addition to the damages awarded for lost profits on purchases actually made by Jauquet, the trial court awarded damages to Jauquet for lost profits allegedly reflected by Jauquet's decreased market share in the Green Bay area. In other words, the trial court awarded damages to Jauquet for contracts that it might have obtained but did not due to the price discrimination.

■■■

Once again, we examine the record to determine whether there is evidence to support the trial court's determination that Jauquet suffered lost profits on these grounds. While it is true that damages for lost profits need not be proven with absolute certainty, "the claimant must produce sufficient evidence . . . on which to base a reasonable inference as to a damage amount." *Lindevig v. Dairy Equip. Co.*, 150 Wis. 2d 731, 740, 442 N.W.2d 504, 508 (Ct. App. 1989). After searching the record, we find no credible evidence that supports the trial court's determination to award $13,400 lost profits on the basis of Jauquet's alleged lost market share.

The only evidence Jauquet provided to prove it suffered a loss of market share was a single document. This document compares the amount of purchases Stock and Jauquet made from Kolbe. The comparison demonstrates that while both companies were purchasing increasingly larger quantities of Kolbe products, Stock's purchases were increasing at a faster rate than Jauquet's purchases. Jauquet conceded at trial and at oral argument that this document is not a valid market share analysis because it does not include all Kolbe dealers in the Green Bay area. Therefore, there is no evidence to support the trial court's finding of damages resulting from Jauquet's alleged lost market share.

Jauquet could also have demonstrated lost market share by presenting evidence of specific contracts it lost to Stock because of the price differential, but it did not do so. Because the record is silent on this issue, we conclude that the court erred by assessing damages based upon lost profits due to a loss in market share. Accordingly, following remand, if judgment is granted against Kolbe, the court is directed to reduce the judgment to $36,600, which is the total amount of damages properly reflected by the record. These damages are to be tripled under the provisions of sec. 133.18(1)(a), Stats.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.