In re **METHIONINE ANTITRUST LITIGATION.**

**West Bend Elevator, Inc.,**

v.

**Rhone–Poulenc, S.A.**

Nos. MDL00–1311, 00–3961.

United States District Court, N.D. California.

Oct. 22, 2001.

See, also, 2001 WL 1018708.

## MEMORANDUM AND ORDER

BREYER, District Judge.

In *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the United States Supreme Court held that the federal antitrust laws do not apply to claims brought by indirect purchasers, that is, those who did not directly purchase the price-fixed product from a conspirator. As a result of that decision, several states, including Wisconsin, enacted statutes ensuring that indirect purchasers have a remedy under state antitrust laws. Plaintiff brings this price-fixing class action under Wisconsin's antitrust statutes on behalf of all Wisconsin indirect purchasers of methionine. Now before the Court is plaintiff's motion for class certification. After carefully considering the papers and evidence filed by the parties, and having had the benefit of oral argument, plaintiff's motion for class certification is DENIED.

## BACKGROUND

Plaintiff alleges that defendants engaged in a nearly 15–year conspiracy to fix the price of methionine sold into the state of Wisconsin and around the world. Defendants sell synthetic methionine in a variety of forms to direct purchasers, that is, those who purchase the methionine directly from defendants. The direct purchasers either resell the methionine in the same form as purchased from defendants, or they process the methionine into a variety of value-added products which they then resell, or they use the methionine themselves. Those who purchase methionine or methionine-containing products from someone other than a defendant are known as indirect purchasers. Indirect purchasers, as with direct purchasers, may use or resell the methionine in the same form as purchased, or may incorporate the methionine into another product.

Plaintiff is a Wisconsin grain elevator and feed mill and an indirect purchaser of methionine. It buys and resells synthetic methio-nine and synthetic methionine-containing products. Nearly all of the methionine that plaintiff resells is purchased from Vita Plus Corporation ("Vita Plus"). During the relevant class period Vita Plus purchased synthetic methionine from other resellers. Plaintiff also buys synthetic methionine-containing animal feed for use at its hog farm.

In the motion before the Court plaintiff seeks certification of the following class: "All natural persons and business entities ... who indirectly purchased methionine as an animal feed additive in the State of Wisconsin from any of the defendants or their co-conspirators from at least January 1, 1985 to the end of 1998." Plaintiff thus seeks certification of a class that includes all methionine indirect purchasers in Wisconsin at all levels of the distribution chain. The class includes those indirect purchasers who purchased methionine from a direct purchaser in the same form as the direct purchaser bought the methionine from a defendant; those who purchased methionine from another indirect purchaser who in turn may have purchased the methionine from a direct or indirect purchaser; and those who purchased from a direct or indirect purchaser any one or more of dozens of different products that contain methionine and are ultimately incorporated into feed for a variety of livestock and pets. The class also includes indirect purchasers who are resellers at various levels in the distribution chain and indirect purchasers who are ultimate consumers. Plaintiff, for example, purchased methionine during the class period as an ultimate consumer for use at its bog farm and it purchased methionine and methionine-containing products for resale.

## DISCUSSION

### I. The Standards For Certifying A Class

Plaintiff bears the burden of proving that certification is appropriate. *See In re Northern Dist. of Calif., Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847, 854 (9th Cir.1982). Federal Rule of Civil Procedure 23 sets forth a two-step procedure for certifying a class. First, the party seeking to certify the class must make a prima facie showing of each of the requirements of subsection (a) of Rule

23:(1) numerosity, (2) common questions of law or fact are present, (3) typicality, and (4) adequate representation. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975). Once these four requirements are met, a plaintiff must show that the lawsuit qualifies for class action status under one of the possibilities found in Rule 23(b). *See In re Citric Acid Antitrust Litigation*, 1996 WL 655791 * 2 (N.D.Cal. Oct.2, 1996). Here, plaintiff contends that certification is appropriate because common questions of law or fact predominate and a class action is superior to other available methods. *See* Fed.R.Civ.P. 23(b)(3).

█ In deciding a motion for class certification, the trial court must "rigorously analyze" whether the party moving for certification has met its burden under Rule 23. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). "Because the early resolution of the class certification question requires some degree of speculation, however, all that is required is that the Court form a 'reasonable judgment' on each certification requirement. In formulating this judgment, the Court may properly consider both the allegations of the class action complaint and the supplemental evidentiary submissions of the parties." *In re Citric Acid Antitrust Litigation*, 1996 WL 655791 at *2.

## II. The Rule 23 Requirements

Defendants do not dispute, and the Court finds, that plaintiff has satisfied the first three requirements of Rule 23(a), the class is sufficiently numerous, there are common questions of law and fact, and the claims of the plaintiff are typical of the claims of the class. *See* Rule 23(a)(1),(2),(3). Defendants argue instead that plaintiff will not fairly and adequately address the interests of the class, *see* Rule 23(a)(4), and that questions of law or fact common to members of the class do not predominate over questions affecting only individual members. *See* Rule 23(b)(3). The Court will address the latter issue first.

### A. Whether common questions of law or fact predominate

█ Under Rule 23(b)(3) a court may certify a class if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." To determine whether common questions predominate, the Court must identify and analyze the questions presented by plaintiff's antitrust claim. To ultimately prevail plaintiff must prove (1) that prices were fixed pursuant to a conspiracy in violation of the antitrust laws, (2) that the class members were injured by the conspiracy, and (3) damages. *See* Wisc. Stats. § 133.03; § 133.18; *see also In re Citric Acid Antitrust Litigation*, 1996 WL 655791 at *2 (stating that to prove liability in a federal law price-fixing case a plaintiff must prove there was a conspiracy to fix prices, prices were fixed, and plaintiffs purchased products at prices that, as a result of the conspiracy, were higher than they should have been); *Grams v. Boss*, 97 Wis.2d 332, 294 N.W.2d 473, 480 (1980) (the Wisconsin antitrust statute is a reenactment of the federal statute).

The first requirement is easily a common question; this question focuses exclusively on defendants' conduct. The third question must be decided individually; the amount of damage suffered by each class member will not be determined on a class-wide basis. Courts have uniformly held, however, that the existence of such an individual question is not a sufficient reason for denying certification. *See* 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure 2d* § 1781 at 8 (1986); *see also In re Citric Acid Antitrust Litigation*, 1996 WL 655791 at * 2 (stating that in deciding whether common questions predominate in an antitrust case the court should focus on liability).

Defendants contend that plaintiff cannot demonstrate that the second element—that is, the fact of damage or impact—can be proved on a class-wide basis and therefore individual questions predominate. *See, e.g., Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir.1982) (affirming decertification order in antitrust case on the

ground that the class representative had failed to show how injury in fact could be demonstrated by generalized proof); *see also Jauquet Lumber Co., Inc. v. Kolbe & Kolbe Millwork Co., Inc.,* 164 Wis.2d 689, 476 N.W.2d 305, 310 (1991) ("Wisconsin's law requires the plaintiff to demonstrate actual injury").

In order for plaintiff to prove that each class member was actually injured by the antitrust conspiracy plaintiff must prove that the "overcharge" was passed on to each member and that the member absorbed the overcharge or was otherwise harmed by having to pay a higher price for the methionine. *See* August 24, 2001 Memorandum and Order at 4–5 (rejecting "full consideration" theory of damages). Thus, for those class members who are methionine resellers, plaintiff must prove that the reseller absorbed the overcharge, that is, that it did not pass on the full amount of the overcharge to its customers. Plaintiff must prove this overcharge injury for those who resold methionine in a dry or liquid form, as well as for those who resold methionine as part of a value-added product. With respect to those indirect purchasers who did, in fact, pass on the full amount of the overcharge to their customers, plaintiff must prove that these indirect purchasers were otherwise harmed by the price-fixing conspiracy, for example, that, each of these indirect purchasers lost sales because they had to charge higher prices. Defendants argue that plaintiff has not demonstrated that these issues can adequately be addressed on a class-wide basis and therefore individual trials will be necessary to resolve liability.

Plaintiff responds that it has met its burden of coming forward with a "colorable method" of proving impact on a class-wide basis at trial. *See generally* 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure 2d* § 1781 (1986). First, plaintiff relies on the declaration of Douglas Greer, plaintiffs' expert in the direct purchaser class action. As plaintiff correctly notes, the Court has already found that Dr. Greer presented a colorable method of proving impact on the direct purchasers on a class-wide basis; that is, a

method of proving on a class-wide basis that all those who purchased methionine directly from the defendants were injured by defendants' alleged price-fixing conspiracy. The issue here, however, is from one to several steps removed from the inquiry in the direct purchaser class action; plaintiff must come forward with a colorable method of proving injury to all Wisconsin indirect purchasers of methionine, including those who were resellers and those who were ultimate consumers, or those, like plaintiff, who were both, as well as those who passed on the entire amount of the overcharge to their customers and those who absorbed part or all of the overcharge.

Plaintiff's method of proving injury to the indirect purchasers on a class-wide basis is based solely on the declaration of plaintiff's expert, John M. Connor. Plaintiff writes that Dr. Connor "has established a formula to calculate pass-on rates applied at each level of distribution." Plaintiff's Memorandum in Support of Class Certification at 14 (citing the declaration of John M. Connor ("Connor Decl.") at ¶ 41–44 and Exh. C), and that his formula "satisfies the predominance requirement here." *Id.* at 14. The Court disagrees.

For purposes of this motion the Court will assume that there is a reasonable method for calculating the direct overcharge, that is, the amount the direct purchasers paid for methionine less what they would have paid but for the price-fixing conspiracy. Indeed, the Court has found that the direct purchaser class action plaintiffs have presented a reasonable method for calculating such impact. Plaintiff's additional burden here, however, is to show that there is a reasonable method for determining on a class-wide basis whether and to what extent that overcharge was passed on to each of the Wisconsin indirect purchasers at all levels of the distribution chain.

Connor's declaration does not come close to meeting this burden. His declaration contains a brief, generic description of how pass-through rates may be calculated for the indirect purchasers:

Pass-through rates can be calculated with historical data at the wholesale and retail levels. Because of the lengthy class pe-

riod, there should be plenty of data to calculate [the pass-through rate] for the methionine industry. Under the normal assumption of fixed proportions in production (constant input/output ratios) [the pass-through rate] is simply the observed ratio of percentage change in purchase price of methionine some months after a price change in the wholesale price of methionine.

Connor Decl. ¶ 48. Plaintiff does not identify any evidence in the record that suggests that this formula is appropriate for the methionine industry. For example, Connor's method assumes that there is a single pass-through rate for all direct and indirect resellers, yet Connor and plaintiff point to nothing in the record that suggests that such an assumption is valid. To the contrary, the evidence demonstrates that resellers do not act uniformly and that they operate in different markets with different competitive pressures; that is, that there is not a single pass-through rate for all methionine resellers regardless of where they are in the distribution chain or what methionine product they sell.

Moreover, Connor does not offer any method for determining whether a reseller who did in fact pass on the full amount of the overcharge to customers (assuming that fact could be determined on a class-wide basis) was injured at all by the price-fixing conspiracy. Plaintiff West Bend, for example, testified in deposition that it passed along the entire amount of any overcharge to its customers. As the Court stated in its order denying defendants' motion for summary judgment, the fact that West Bend may have passed on the full amount of the overcharge does not mean that it has not suffered any antitrust injury; (it may have lost market share or otherwise suffered reduced sales as a result of charging higher prices). Connor's method, however, does not identify whether such injury occurred. Indeed, it does not ever identify whether an individual class member passed on the full amount of the overcharge. The Court would have to make an inquiry into the particular circumstances of plaintiff's business in order to determine if the price-fixing conspiracy had in fact injured plaintiff. In short, Connor's method will not determine whether an individual class member has in fact been injured by the price-fixing conspiracy.

Accordingly, plaintiff has not demonstrated that injury in fact—an element essential to prove liability—can reasonably be proved on a class-wide basis. Thus, while the issue of the conspiracy is a common question, the question of injury in fact is an individual question that would have to be resolved by mini-trials examining the particular circumstances of each class member. It follows then that common issues do not predominate and class certification under 23(b)(3) is inappropriate. *See, e.g., Kerr v. Abbott Labs.,* 1997 WL 314419 \* 2 (Minn.Dist.Ct. Feb.19, 1997) (denying class certification and noting that "where the issues of impact and damages do not lend themselves to . . . a mechanical calculation, but require separate mini-trials of an overwhelmingly large number of individual claims, courts have found that the 'staggering problems of logistics' thus created 'make the damage aspect of the case predominate,' and render the case unmanageable as a class action.") (citation omitted); *City of St. Paul v. FMC Corp.,* 1990 WL 259683 \*2 (Minn.Dist.Ct. Nov. 14, 1990) (denying certification on the ground that impact could not be proved on a class-wide basis).

The cases upon which plaintiff relies do not suggest that plaintiff has met its burden here. In *Carlson v. Abbott Labs.,* 94–002608 (Wisc. Cir. Ct., filed March 23, 1995), the court certified a class of persons who indirectly purchased one or more brands of infant formula for use. The class in *Carlson,* unlike the class plaintiff seeks to certify here, did not include resellers and thus did not include the issue of whether the class member itself had passed on the overcharge. Moreover, infant formula, unlike methionine, is not added into other products that are then resold; thus the issue of how much of the price of the resold product was a result of an anti-competitive overcharge and how much was the result of other costs was not present. Finally, and most importantly, the plaintiff in *Carlson* must have presented the court with a reasonable method of computing injury in fact on a class-wide basis; plaintiff has not come forward with such a method here.

Plaintiff's reliance on *B.W.I. Custom Kitchen v. Owens–Illinois, Inc.,* 191 Cal. App.3d 1341, 235 Cal.Rptr. 228 (1987), is equally unavailing. *B.W.I.* was an indirect purchaser class action by California businesses which purchased glass containers; the class was limited to resellers who purchased the glass containers in their pure form and then resold the containers filled with food. The additional complication of determining how much of the final price was a result of the cost of the food and how much was a result of the glass container "overcharge" was avoided since the class was limited to California businesses. Indeed, the court specifically noted that "[w]here the product in question is ultimately sold to the consumer, and is largely unchanged in form from the price-fixing manufacturer to the indirect purchaser, assessing whether the manufacturer's overcharges are passed on is less difficult." *Id.* at 1353, 235 Cal.Rptr. 228. The court certified the class because "the effects of the price-fixing were not obscured by substantially altering or adding to the item received from the manufacturer." The evidence before the Court shows that is not the case with methionine indirect purchasers.

*Robinson/Silvey v. EMI Music Distribution, Inc.,* 1996 WL 495551 (Tenn.Cir.Ct. July 8, 1996), involved a class of plaintiffs who purchased new Compact Disks ("CDs") manufactured by defendants from retail stores in Tennessee. The class did not include resellers and the product was not altered or incorporated into a different product along the distribution chain; the price-fixed CD was sold as a CD. Indeed, the court concluded that "the only proof which might differ from plaintiff to plaintiff and class member to class member would appear to be the number of CDs purchased, the locations of these purchases, and the amount each class member paid for the CD." *Id.* at *4. Here, in contrast, the evidence shows that the proof will differ for each class member as to whether that member was overcharged for methionine or a methionine-containing product, and if so, whether and to what extent the member passed on the overcharge and, if the overcharge was fully passed on, how the class member was otherwise injured by the conspiracy.

*Goda v. Abbott Labs.,* 1997 WL 156541 (D.C.Sup.Ct. Feb. 3, 1997), also cited by plaintiff, demonstrates why Connor's declaration is insufficient to satisfy plaintiff's burden. *Goda* was a class action brought on behalf of indirect purchasers of brand name drugs from retail pharmacies in the District of Columbia. The court concluded that the manufacturers sold the drugs directly to the retailers so there was only one "tier" separating the class members from the defendants and the class members were all ultimate consumers and did not include any resellers. The court noted:

> The ultimate consumer, at least in one respect, presents an easier question as a plaintiff than a middleman, indirect purchaser. The ultimate consumer has no one to pass on to and there are no damages other than the overcharge he suffers. But the middleman, even though passing on the overcharge in whole or in part, may yet demand additional damages on the theory that his sales were reduced by the increased prices.

*Id.* The proposed class here, unlike the class in *Goda,* includes both middlemen and ultimate consumers, and it presents multiple layers of middlemen and a product which is sold in its pure form, like drugs, but also incorporated into other products. Connor's formula does not take any of these characteristics into account.

Plaintiff also argues that the Court need not make any individualized inquiry because antitrust injury should be presumed in a price-fixing case. While some courts have applied such a presumption, *see, e.g., In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 327 (E.D.N.Y.1982); *In re Plywood Anti-Trust Litigation,* 76 F.R.D. 570, 583 (D.C.La. 1976), the evidence before the Court demonstrates that such a presumption is unwarranted here. The Court cannot ignore the evidence that shows that some of the class members, including plaintiff, may not have been injured by the antitrust conspiracy because the overcharge was not passed along or because the class member itself passed along the full amount of the overcharge to its customers. To do so would violate the Su-

preme Court's command that the Court "rigorously analyze" whether plaintiff has demonstrated that the requirements of Rule 23 have been met.

At oral argument, plaintiff insisted that by failing to certify the class the Court is thwarting the will of the people of Wisconsin; the Wisconsin legislature expressly authorized indirect purchaser class actions after the Supreme Court held that such actions are not viable under federal law. Plaintiff's argument misapprehends the order of the Court and plaintiff's burden. The Court's denial of plaintiff's motion is not based on a finding that no class of indirect purchasers could ever be certified. Indeed, it is not ever based on a finding that no class of indirect purchasers of methionine could ever be appropriate for certification. Instead, the Court merely concludes that plaintiff has not come forward with a colorable method of proving injury in fact on a class-wide basis. *See Nichols,* 675 F.2d at 678.

### B. Adequacy

Defendants also challenge plaintiff's adequacy to serve as a class representative. They argue that (1) it has no standing to pursue antitrust claims because it admits that it passed on the higher price of methionine to its customers, and (2) that its interests conflict with other members of the class.

The Court has previously denied defendants' motion for summary judgment with respect to the standing issue. Plaintiff does appear to have a conflict with the class members to whom it resold methionine. Plaintiff, as an intermediary, has an interest in proving that it absorbed all the costs of the increased price in methionine that it purchased from its suppliers, while those who purchased from plaintiff, or other similarly situated distributors, have an interest in proving that all of the costs were passed on. In any event, as the Court has concluded that plaintiff has not shown that injury in fact can be proved on a class-wide basis, the Court need not decide whether plaintiff is an adequate representative.

### CONCLUSION

Dr. Connor's generic assertion that a pass along rate can be computed is, without more, insufficient to meet plaintiff's burden of coming forward with a colorable method of determining injury in fact on a class-wide basis. As the record before the Court demonstrates that individual trials will be necessary to determine whether each indirect purchaser class member was actually injured by the price-fixing conspiracy, common issues of fact or law do not predominate and the maintenance of this lawsuit as a class action is not appropriate. Accordingly, plaintiff's motion for class certification is DENIED.

**IT IS SO ORDERED.**