Jessica MAYBERRY, Plaintiff-Appellant,

v.

VOLKSWAGEN OF AMERICA, INC., Defendant-Respondent.†

Court of Appeals

*No. 03–1621. Submitted on briefs December 15, 2003.—Decided February 24, 2004.*

2004 WI App 64

(Also reported in 678 N.W.2d 357.)

† Petition to review granted 5-12-04.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Gregory H. Moss* and *Krohn & Moss, Ltd.* of Chicago, IL.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Bruce D. Huibregtse, Drew J. Cochrane* and *Stafford Rosenbaum LLP* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Jessica Mayberry appeals a summary judgment dismissing her Magnuson-Moss Warranty Act claim, 15 U.S.C. §§ 2301–2312 (1975),

against Volkswagen of America, Inc. The circuit court concluded that because Mayberry traded in her allegedly defective automobile for more than its fair market value, she suffered no damages and therefore could not sustain her claim. The court used an incorrect standard for measuring damages, and genuine issues of material fact exist precluding summary judgment. We therefore reverse and remand for further proceedings.

## Background

¶ 2. On October 14, 2000, Mayberry purchased a new 2001 Volkswagen Jetta from Van Dyn Hoven Imports, LLC, in Appleton. According to the invoice, the price of the car was $18,175, but with "collateral charges, such as bank and finance charges, [the car] totaled more than $22,548.80." There is no dispute that the vehicle was covered by a two-year, 24,000–mile written warranty.

¶ 3. Shortly after taking possession of the vehicle, "numerous defects manifested." These defects included repeated illumination of the check engine light, excessive oil leakage and usage, and a broken armrest. Mayberry took the Jetta to Van Dyn Hoven for repairs. Van Dyn Hoven worked on the problems at no charge, although Mayberry complains the problems were not remedied.

¶ 4. Mayberry decided to revoke her acceptance of the vehicle, but Volkswagen refused her demand. Thus, in June 2002, Mayberry filed her complaint against Volkswagen, alleging (1) Volkswagen breached its written warranty under the Act; (2) Volkswagen breached

its implied warrant of merchantability under the Act; and (3) she had revoked her acceptance under the Act.[1]

¶ 5. In September 2002, after Mayberry had put over 32,000 miles on the Jetta, she traded it in and received a $15,100 allowance, amending her complaint to reflect the trade. Volkswagen then moved for summary judgment, submitting evidence that the car's fair market value at the time of the trade-in was actually less than what Mayberry received for the trade. Mayberry's expert provided an affidavit that actually reinforced Volkswagen's arguments. Because she received more than the Jetta's value, Volkswagen contended she suffered no damages.

¶ 6. The trial court agreed, granting Volkswagen's motion. Relying on *Valenti v. Mitsubishi Motor Sales*, 773 N.E.2d 1199 (Ill. App. Ct. 2002), the court concluded that Mayberry could not establish damages because she sold the car for more than fair market value despite its alleged defects.

## Discussion

¶ 7. We review summary judgments de novo, using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Generally, summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We must view the facts in the light most favorable to the nonmoving party. *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 512, 383 N.W.2d 916

---

[1] This case is not premised on Wisconsin's "lemon law." *See* Wis. Stat. § 218.0171. All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

(Ct. App. 1986). "If the material presented on the motion is subject to conflicting interpretations or reasonable people might differ as to its significance, it would be improper to grant summary judgment." *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980).

¶ 8. The Magnuson-Moss Warranty Act is designed to

> require certain disclosures with respect to written warranties, to provide consumers certain remedies in the case of failure of disclosure or nonconformity, and to force warrantors to use certain common adjectives to describe their written warranties.

JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, § 9–13 (2d ed. 1980). If a product or part continues to be defective or malfunctioning "after a reasonable number of attempts by the warrantor to remedy defects or malfunctions," the warrantor must allow the consumer to elect a refund or replacement of the product or part without charge. 15 U.S.C. § 2304(a)(4) (1975). If the warrantor fails to comply with this obligation, "a consumer who is damaged by the failure . . . may bring suit for damages and other equitable relief." 15 U.S.C. § 2310(d)(1) (1975). However, state law is applied to determine damages. *See, e.g., MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979); 17 AM. JUR. 2D *Consumer Product Warranty Acts* § 12 (2d ed. 2004).

¶ 9. While the facts relating to a damages calculation are a matter left to the trial court, determining the appropriate method of calculation or measure of damages is a question of law. *Jauquet Lumber Co. v.*

*Kolbe & Kolbe Millwork Co.*, 164 Wis. 2d 689, 703, 476 N.W.2d 305 (Ct. App. 1991). Questions of statutory interpretation are also questions of law. *Hughes v. Chrysler Motor Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148 (1996).

¶ 10. In Wisconsin:

> The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

WIS. STAT. § 402.714(2). Both parties submit this as the standard, although they disagree on its application. We note that nowhere does the statute mention contemplation of the car's trade-in or fair market values. Because the trial court applied the wrong test for determining damages, the summary judgment was premised on an error of law.

¶ 11. "The time and place of acceptance" defines the temporal moment when we consider both the value of the goods accepted and the value they would have had if they had been as warranted. Mayberry offered her opinion as to the value of the Jetta when she accepted it. She suggested that because of the inherent defects, the car was really only worth about $12,000.[2]

--------

[2] Volkswagen argues and the trial court concluded that Mayberry's testimony was not specific enough to prove her damages. However, at the summary judgment stage, the party with the burden of proof at trial need only "make a showing sufficient to establish the existence of an element essential" to her case. *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 292, 507 N.W.2d 136 (Ct. App. 1993) (citation

Volkswagen produces no contrary evidence, but only claims Mayberry is not qualified to offer her opinion on the Jetta's value. We disagree. The owner of an item is competent to give opinion evidence on value. *See Wilberscheid v. Wilberscheid,* 77 Wis. 2d 40, 48, 252 N.W.2d 76 (1977). Volkswagen's complaint goes to the weight of Mayberry's opinion, not its admissibility.

¶ 12. The warranted value of the vehicle is the value of the vehicle substantially free of defects. *See Murray v. Holiday Rambler, Inc.,* 83 Wis. 2d 406, 420, 265 N.W.2d 513 (1978). Thus, the $18,000 purchase price is the warranted value at the time and place of acceptance. Considering the fair market or trade-in value for either measure is inappropriate here because the trade-in did not occur "at the time and place of acceptance."

¶ 13. Implicitly, Volkswagen relies on the "special circumstances" portion of the statute when it argues we should consider the Jetta's trade-in value. We discern Volkswagen's argument to be that whatever loss Mayberry may have suffered initially on the car's value, if any, she recovered it when she received a trade-in amount greater than the car's fair market value.[3]

---

omitted). Here, Mayberry averred that the vehicle was only worth $12,000 when she accepted it and Volkswagen offers no evidence to the contrary. Because this is summary judgment, we view the evidence in the light most favorable to the nonmoving party. Thus, Mayberry made sufficient allegations to survive summary judgment, although whether she will ultimately prevail on the merits is another issue entirely.

[3] Volkswagen also argues that it is entitled to an offset for the mileage Mayberry put on the vehicle, especially considering she ran out the warranty. The offset might be addressed as a "special circumstance." Despite the fact that Mayberry used more than the 24,000 miles to which the warranty was limited,

¶ 14. The trial court concluded, based on *Valenti*, 773 N.E.2d at 1199, that Mayberry had no damages because she received more than the car's market value, even based on her own expert's evidence. Not only does this fail to consider Wisconsin's statutory measure of damages, but a subsequent decision of the Appellate Court of Illinois concluded that "there is nothing in the language of the [Magnuson-Moss Warranty] Act to suggest or imply that the resale of the product at issue precludes recovery for breach of contract." *Bartow v. Ford Motor Co.*, 794 N.E.2d 1027, 1032 (Ill. App. Ct. 2003).

¶ 15. In short, the measure of damages in Wisconsin for breach of warranty under the Act is found in Wis. Stat. § 402.714(2). Nowhere does the statute suggest that the fair market value at the time of trade-in is the appropriate yardstick. Illinois previously had a rule suggesting that when one receives more than a vehicle's fair market value at trade-in there are no damages and, while we might normally consider this persuasive authority, subsequent Illinois case law directly contradicts that rule. Thus, based on the statutory measure of damages in § 402.714(2), a genuine issue of fact exists on the question of damages. Mayberry has offered evidence of the Jetta's value at the time and place of acceptance. Volkswagen, however, has offered evidence suggesting "proximate damages of a different amount." The difference cannot be resolved in summary judgment.[4]

"each owner is entitled to enforce the warranty as long as he or she possesses it while it remains viable." *Bartow v. Ford Motor Co.*, 794 N.E.2d 1027, 1032 (Ill. App. Ct. 2003).

[4] The circuit court may need to start by addressing the issue whether there was a breach of warranty because there must be a breach before damages can be awarded. In addition, Mayberry

*By the Court.*—Judgment reversed and cause remanded with directions.

and Volkswagen dispute whether Mayberry may recover incidental and consequential damages. Volkswagen claims those damages were disclaimed in the warranty, but Mayberry argues that Volkswagen may not "shield itself" with a warranty that has "failed of its essential purpose." The circuit court addressed neither of these issues, apparently because it considered its finding of no damages to be dispositive, but it may consider both on remand if necessary.