ANNE MURPHY et al., Respondents, v MALLARD COACH COM-
PANY et al., Appellants.

Third Department, April 9, 1992

**APPEARANCES OF COUNSEL**

*Carusone & Carusone (Bruce R. Rosenthal* of counsel), for Mallard Coach Company, appellant.

*Englert, Stillman & McHugh (Dennis M. Englert* of counsel), for R.V. America, appellant.

*E. Stewart Jones (David J. Taffany* of counsel), for respondents.

## OPINION OF THE COURT

MAHONEY, J.

This action for, *inter alia,* breach of warranty is the culmination of a one-year ordeal by plaintiffs to have certain plumbing defects in their new motor home remedied. In February 1986, plaintiffs purchased a motor home from defendant R. V. America (hereinafter the retailer). The motor home was manufactured by defendant Mallard Coach Company (hereinafter the manufacturer) and came with a limited, one-year warranty from the manufacturer warranting "to the original CONSUMER PURCHASER * * * that [the motor home] shall be free of SUBSTANTIAL DEFECTS in materials and workmanship attributable to Warrantor".[1]

While there were numerous minor defects in the fit and finish of the coach, the major problem was the presence of a plumbing leak which resulted in water accumulating in the rear bedroom saturating the carpet and staining the walls whenever plaintiffs would activate and use the coach's internal water system. This problem manifested itself the first time plaintiffs attempted to use the water system in May 1986. While they returned the motor home to the retailer for repair and were assured that the problem was rectified, the leaking reoccurred during another outing during the summer of 1986. Again, it was returned to the retailer and plaintiffs were again assured that the situation had been corrected. When the problem persisted during a September 1986 outing and plaintiffs returned it for the third time in the fall of 1986, they were advised by the retailer that a more extensive search for the source of the problem was in order, i.e., the removal of some of the cabinetry and fixtures in the bedroom and adjoining bathroom to expose the plumbing lines. The repair process took several months. During this time, plaintiffs registered an official complaint with the manufacturer about the poor quality of the motor home.

---

1. The warranty further recited that defects would be remedied by repair, replacement or refund, but the refund option was only available if the purchaser agrees or the warrantor "is unable to provide replacement, and repair is not commercially practicable or cannot be timely made". All defects were to be remedied "within a reasonable time, not to exceed thirty (30) days after delivery by purchaser".

In December 1986, plaintiffs were advised that the repairs were complete. However, upon inspection which revealed, among other things, a hole in the shower area which had been patched, a crack in the tub and defects in installation of new carpet in the bedroom, plaintiffs, believing that the motor home had not been properly repaired and the work performed was not satisfactory, refused to accept the vehicle. Shortly thereafter, they made a written demand to the manufacturer for replacement of the motor home or for a full refund. Additional work was thereafter commenced by the retailer. The interior was dismantled in an attempt to correct the defects. However, plaintiffs still refused to accept the vehicle following these repairs because of the continued existence of some defects and the fact that the one-year warranties on the various appliances and fixtures were about to expire, thus leaving plaintiffs without any protection in the event one of these items, which they had hardly had a chance to use, was to malfunction. They demanded a refund.

This action followed. After completion of a bench trial, Supreme Court concluded that plaintiffs validly revoked acceptance of the motor home and that both defendants breached express warranties and the implied warranty of merchantability. Judgment was awarded to plaintiffs in the amount of $39,442.28, the full purchase price plus interest, costs and disbursements conditioned upon plaintiffs transferring title to the motor home jointly to defendants. Liability was apportioned 75% to the manufacturer and 25% to the retailer. Both defendants appeal.

Under UCC article 2, upon delivery of goods that, at the time or subsequent thereto, are determined to be nonconforming or fail to meet the quality terms contained in the contract of sale, a buyer has three options: (1) accept the goods and obtain, as a general rule, the difference between the value of the goods as warranted and the value as accepted by bringing a suit for breach of an express warranty or one of the implied warranties of quality (UCC 2-607, 2-714 [2]), (2) reject the goods and, to the extent that the seller fails to reasonably cure the defect (UCC 2-508), cancel the contract and recover, *inter alia,* so much of the purchase price as has been paid (UCC 2-602, 2-508, 2-711), or (3) revoke acceptance upon discovery of the nonconformity and obtain the same remedies as are available upon rejection (UCC 2-608, 2-711). Inasmuch as under the UCC, the buyer's remedies are dependent upon which of the above actions are taken with respect to the

goods, such is usually the threshold issue in resolving sales disputes.

In this case, even assuming that plaintiffs' actions were insufficient to constitute a valid revocation of acceptance under UCC 2-608 with the result that they are deemed to have accepted the motor home, we believe that the credible evidence supports Supreme Court's conclusion that the manufacturer and retailer were liable for breach of warranty and that the damages awarded, i.e., refund of the purchase price, were proper in view of the existing circumstances.

While the warranty provisions of UCC article 2, on their face, apply equally to consumer as well as mercantile transactions, in an effort to protect the consumer from the obvious imbalance of bargaining power with a retailer or manufacturer as regards the substantive content of warranties, various State and Federal laws have been enacted which modify the applicability and operation of UCC article 2 warranties (see, Note, *Consumer Product Warranties Under the Magnuson-Moss Warranty Act and the Uniform Commercial Code,* 62 Cornell L Rev 738 [1977]; Strasser, *Magnuson-Moss Warranty Act: An Overview and Comparison with UCC Coverage, Disclaimer, and Remedies in Consumer Warranties,* 27 Mercer L Rev 1111 [1976]). One such enactment is the Magnuson-Moss Warranty Act (15 USC § 2301 *et seq.* [hereinafter the Act]). The Act provides a private right of action by a consumer purchaser of a consumer product against a manufacturer or retailer who, *inter alia,* fails to comply with the terms of a written warranty or any implied warranty (15 USC § 2310 [d] [1]; *see, Hughes v Segal Enters.,* 627 F Supp 1231, 1236). To the extent the Act is applicable, it supersedes inconsistent provisions of the UCC (see, Note, *Consumer Product Warranties Under the Magnuson-Moss Warranty Act and the Uniform Commercial Code,* 62 Cornell L Rev 738).

It is clear that the manufacturer's warranty in this case is a written warranty within the meaning of the Act. Under 15 USC § 2301 (6) (B), the term written warranty is defined as (1) a written undertaking, (2) made by a supplier of a consumer product, (3) in connection with a sale, (4) to refund, repair, replace or take other remedial action with respect to the product in the event it fails to meet the specifications set forth in the undertaking, (5) which becomes part of the basis of the bargain. The existence of the first four elements is

beyond cavil.[2] Likewise, we believe that while the warranty was technically handed over *after* plaintiffs paid the purchase price, the fact that it was given to plaintiffs at the time they took delivery of the motor home renders it sufficiently proximate in time so as to fairly be said to be part of the basis of the bargain *(compare,* UCC 2-313, Comment 7; 1 White and Summers, Uniform Commercial Code § 9-5, at 448-455 [3d ed]; *cf., Marine Midland Bank v Carroll,* 98 AD2d 516). To accept the manufacturer's argument that in order to be part of the basis of the bargain the warranty must actually be handed over during the negotiation process so as to be said to be an actual procuring cause of the contract, is to ignore the practical realities of consumer transactions wherein the warranty card generally comes with the goods, packed in the box of boxed items or handed over after purchase of larger, non boxed goods and, accordingly, is not available to be read by the consumer until after the item is actually purchased and brought home. Indeed, such interpretation would, in effect, render almost all consumer warranties an absolute nullity.

■ That there was a breach of the written warranty, i.e., that the manufacturer failed to repair a substantial defect within a reasonable time not to exceed 30 days, is equally clear. A faulty plumbing system in a motor home which results in the occurrence of interior flooding when the indoor plumbing is used is a substantial defect. The motor home was returned three times for repair of this defect and twice it was returned unremedied. That plaintiffs chose not to give the manufacturer a third chance to effect the repairs is not fatal to their claim. The warranty expressly stated that defects would be remedied within 30 days and this one clearly was not.

■ With regard to the retailer's liability, at the outset we note that there is authority for the proposition that the inspection checklist issued by the retailer to plaintiffs at the time they initially picked up the motor home qualifies as a written warranty under the Act *(see, Marine Midland Bank v Carroll,* 98 AD2d 516, *supra),* which warranty clearly was breached. In any event, sufficient evidence exists to hold the retailer liable under the Act for breach of implied warranty. Since the Act defines the term implied warranty as "an

2. In this regard it is significant to note that the definition of supplier set forth in 15 USC § 2301 (4) is not limited to the actual seller, but encompasses "any person engaged in the business of making a consumer product directly or indirectly available to consumers.

implied warranty arising under State law * * * in connection
with the sale by a supplier of a consumer product" (15 USC
§ 2301 [7]), resort must be had to the implied warranty provi-
sions of the UCC in determining the existence of such war-
ranty. Under that analysis, it being uncontroverted that the
retailer herein was a merchant within the meaning of UCC 2-
104 (1) and that no valid disclaimer was made (UCC 2-316 [2]),
the implied warranty of merchantability arose in the instant
transaction (UCC 2-314). Whether the quality of the motor
home was such that it was not "fit for the ordinary purposes
for which such goods are used" (UCC 2-314 [2] [c]) is a question
of fact. In our view, the record contains ample evidence to
support Supreme Court's conclusion that it was not. Undoubt-
edly, a motor home with plumbing leaks of the sort described
herein is not merchantable. Even with this defect arguably
repaired, it can fairly be said that the defects in the fit and
finish resulting from the dismantling of the coach to fix the
plumbing rendered the vehicle unable to "pass without objec-
tion in the trade under the contract description" (UCC 2-314
[2] [a]).

 A breach having thus been established against both the
retailer and manufacturer, and plaintiffs having thereafter
made clear that they did not want this motor home, Supreme
Court properly awarded plaintiffs a full refund.[3] Under the
Act, the damages recoverable for economic loss due to breach
of warranty are to be determined pursuant to State law
(Boelens v Redman Homes, 748 F2d 1058, 1064). In general,
under UCC 2-714 (2), absent special circumstances, "[t]he
measure of damages for breach of warranty is the difference
at the time and place of acceptance between the value of the
goods accepted and the value they would have had if they had
been as warranted". However, the calculation of damages
under this general rule presumes that the purchaser will
retain title to the goods. Plaintiffs have made clear that they
do not want the motor home since they have lost confidence in
its integrity. In view of the sordid history of this matter, the
"hit or miss" way defendants went about determining and
fixing the plumbing defects and the ostensibly shoddy work-
manship involved in reconstructing the unit after it was
dismantled for repairs, we believe that plaintiffs' sentiments

---

3. While there is a limitation of remedy provision in the manufacturer's
warranty, it does not limit plaintiffs to repair or replacement but specifically
provides for the availability of a refund, at their option.

in this regard are justified and that such constitutes sufficient special circumstances to warrant departure from the general rule *cf., Gem Jewelers v Dykman,* 160 AD2d 1069).

Inasmuch as neither defendant affirmatively challenges Supreme Court's apportionment of damages, we deem that issue abandoned.

WEISS, P. J., LEVINE, MERCURE and CASEY, JJ., concur.

Ordered that the judgment is affirmed, with costs.