Jessica MAYBERRY, Plaintiff-Appellant,

v.

VOLKSWAGEN OF AMERICA, INC., Defendant-
Respondent-Petitioner.

Supreme Court

*No. 03–1621. Oral argument November 4, 2004.—Decided
February 16, 2005.*

2005 WI 13

(Also reported in 692 N.W.2d 226.)

For the defendant-respondent-petitioner there were briefs by *Bruce D. Huibregtse, Drew J. Cochrane,* and *Stafford Rosenbaum LLP,* Madison, and oral argument by *Drew J. Cochrane.*

For the plaintiff-appellant there was a brief by *Matthew J. McClenahan* and *Krohn & Moss, Ltd.,* Chicago, IL, and oral argument by *Scott Cohen.*

¶ 1. JON P. WILCOX, J. This is an appeal from a published court of appeals decision, *Mayberry v. Volkswagen of America Inc.,* 2004 WI App 64, 271 Wis. 2d 258, 678 N.W.2d 357, that reversed an order of the Outagamie County Circuit Court, Harold V. Froehlich, Judge, which granted summary judgment to Volkswagen and dismissed the plaintiff's claims for breach of warranty.

## I. ISSUE

¶ 2. The issue on appeal concerns the proper measure of damages under Wisconsin's Uniform Commercial Code in a breach of warranty action. We must determine what constitutes the appropriate measure of damages where the buyer alleges that the product was defective and not worth what she paid for it at the time of acceptance but nonetheless used the product for a

42

significant period of time and later resold the product for more than its fair market value after the manufacturer made several attempts at repairing the product. Specifically, the issue before us is whether the "special circumstances" clause in Wis. Stat. § 402.714(2) (2001–02)[1] requires damages in a breach of warranty action to be calculated based on the difference between the fair market value of the defective product at resale and the price the consumer actually obtained, such that a consumer's claim may be barred if she receives more than the fair market value for the defective product upon resale. This is an issue of first impression in Wisconsin.

¶ 3. We reject Volkswagen's claim that the "special circumstances" language in § 402.714(2) prevents the plaintiff from maintaining her action by calculating damages based on the difference in market value and actual price at the time of resale. We hold that pursuant to § 402.714(2), the appropriate method for measuring damages in this case is the difference between the warranted value of the vehicle in question and its actual value at the time and place of acceptance. When the plaintiff has established a prima facie case of damages under this standard, the "special circumstances" clause of § 402.714(2) should not be construed so as to completely bar her breach of warranty claim simply because she used the defective product for a period of time and later resold it for more than its fair market value. We have found no authority that stands for the proposition that the proper measure of damages under the Uniform Commercial Code in such circumstances is the difference between the market value and actual price ob-

---

[1] Unless otherwise indicated, all subsequent references to the Wisconsin Statutes are to the 2001–02 version.

43

tained for the defective product at the time and place of resale. However, the price of the defective product upon resale may be relevant insomuch as it constitutes circumstantial evidence of the actual value of the product in its defective condition at the time and place of acceptance.

¶ 4. Because the circuit court applied an incorrect standard for measuring damages, we affirm the decision of the court of appeals reversing the circuit court's order of summary judgment.

## II. FACTUAL BACKGROUND

¶ 5. On October 14, 2000, the plaintiff, Jessica Mayberry, purchased a new 2001 galactic blue Volkswagen Jetta GLS from Van Dyn Hoven Imports in Appleton, Wisconsin. The cash price of the vehicle was $17,800. After sales tax, registration, title, and other fees, the price of the vehicle came to $18,526. However, according to Mayberry, the total purchase price of the vehicle came to $22,548 after adding finance charges. As part of the vehicle purchase, the manufacturer, Volkswagen, issued a two-year or 24,000 mile limited warranty for the Jetta. Under the terms of the written warranty, Volkswagen agreed to repair any manufacturer's defect in material or workmanship and replace defective parts free of charge for the warranty period.[2] However, the warranty did not give Mayberry the right to a refund or replacement of the vehicle if it was defective.

---

[2] The warranty specifically excluded "any incidental or consequential damages, including loss of value of the vehicle, lost profits or earnings, or out-of-pocket expenses for substitute transportation or lodging." The parties dispute the validity of this clause. However, as this issue is not properly before us, we do not address whether Mayberry may recover incidental and consequential damages.

¶ 6. Shortly after taking possession of the Jetta, Mayberry began experiencing problems with the vehicle. Service records from Van Dyn Hoven indicate that Mayberry brought the vehicle in for service on a number of occasions for various problems. The problems consisted of a broken armrest, intermittent illumination of the "check engine" light, and burning and leaking oil. The engine problems culminated in the replacement of a piston ring in the engine on November 29, 2001. On all occasions, the vehicle was inspected or repaired free of charge under the warranty.[3] Thereafter, Mayberry attempted to revoke acceptance of the vehicle in writing. Volkswagen refused the revocation.

¶ 7. On June 3, 2002, Mayberry filed suit against Volkswagen under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (2000),[4] asserting three causes of action. First, Mayberry alleged that Volkswagen breached its written warranty for the vehicle. Second, Mayberry contended that Volkswagen breached its implied warranty of merchantability under 15 U.S.C. §§ 2301(7) & 2308. Finally, Mayberry claimed that she revoked her acceptance under 15 U.S.C. § 2310.

¶ 8. Subsequently, Mayberry traded in her Volkswagen for a 2003 Mazda Tribute at Mazda Knoxville. Mayberry received $15,100 as a trade-in allowance for the Jetta. The total purchase price of the Mazda Tribute was $24,149.32. At the time of the trade-in, the mileage on the Jetta was 32,737. On November 8, 2002, Mayberry amended her complaint to reflect the trade-in

---

[3] The service records indicate that Mayberry was charged for routine maintenance, such as oil and filter changes, which were not covered under the warranty.

[4] Unless otherwise indicated, all subsequent references to the United States Code are to the 2000 version.

of the Jetta. As an affirmative defense to the amended complaint, Volkswagen alleged that Mayberry "suffered no damages as she received more than the full fair market value for the vehicle which is the subject of the action at the time of the trade in."

## III. PROCEDURAL POSTURE

¶ 9. On February 18, 2003, Volkswagen moved for summary judgment on the ground that Mayberry did not suffer any damages as a result of the allegations set forth in her complaint. Specifically, Volkswagen argued that Mayberry was "unable to prove that she suffered any compensable damages" because "Mayberry traded in the vehicle for more than fair market value." In addition, Volkswagen argued that Mayberry's extended use of the vehicle and subsequent trade-in for more than fair market value invalidated her revocation of acceptance claim because she could not demonstrate that the value of the Jetta was substantially impaired.

¶ 10. In response to the summary judgment motion, Mayberry submitted the affidavit of Joseph Pennachio, her named expert and "retail vehicle finance specialist."[5] Mr. Pennachio opined that Mayberry did not receive fair market value for her Jetta. He stated, based on the N.A.D.A. Official Used Car Guide, that the fair market value of the vehicle at the time of the trade-in was $15,900 and that "[t]he Fair Market Value indicated given the presumption of a private party transaction would be $17,900." However, in a letter filed with the court on April 21, 2003, Mayberry conceded:

---

[5] Mr. Pennachio's curriculum vitae indicates that he previously held the position of a salesman at The Oak Agency and that of finance manager at Carr's Honda. Mr. Pennachio is currently the owner of Prime Lending, a vehicle loan brokerage business.

"Mr. Joe Pennachio's report appears flawed. While Mr. Pennachio asserts the FMV of the vehicle at the time of sale was $15,900.00 it is true that the N.A.D.A. Official Used Car Guide states that the applicable FMV of this vehicle for trade in is $14,200.00."

¶ 11. In addition, Mayberry herself filed an affidavit, stating:

> Based on the problems with the Jetta that I experienced, it is my opinion that I paid too much money for the vehicle. I believe that the Jetta was not worth $18,526.00 I paid at the time I purchased it and at most was worth only $12,526.00 based on the problems I experienced.

¶ 12. The circuit court rendered its decision on May 7, 2003. First, the circuit court dismissed Mayberry's revocation of acceptance claim, reasoning:

> Plaintiff used the car for almost two years, put 32,737 miles on it, and expired the warranty. The car was never out of service for a prolonged period of time. Plaintiff received more than FMV on a trade-in. Therefore, there was no substantial impairment of the value of the goods and no effective revocation.[6]

¶ 13. Furthermore, the circuit court ruled, based on *Valenti v. Mitsubishi Motor Sales of America, Inc.*, 773 N.E.2d 1199 (Ill. App. Ct. 2002), that Mayberry failed to establish she suffered any damages for any breach of warranty.[7] The court reasoned:

---

[6] The parties have not appealed from this portion of the circuit court's summary judgment decision.

[7] While the circuit court stated that "[t]he affidavits and other proof submitted by defendant establish a prima facie case for summary judgment because plaintiff suffered no damages and defendant did not breach it [sic] warranties[,]" the circuit

> Plaintiff argues that the Jetta was defective when she bought it and she suffered damages in having it repaired. However, she is not specific about her damages and she does not offer any evidence to dispute the FMV of the car. In fact, her expert's assessment has the FMV below what she received on trade-in. Furthermore, she was not charged for any repairs covered under the warranty.
>
> . . . . Plaintiff actually received more than FMV for the Jetta. She put 32,737 miles on the car in less than two years. She has no damages.

Thus, on May 28, 2003, the circuit court entered judgment in favor of Volkswagen, dismissing Mayberry's complaint in its entirety.

¶ 14. The court of appeals reversed, concluding that the circuit court utilized an incorrect standard for measuring damages and that genuine issues of material fact concerning damages existed. *Mayberry,* 271 Wis. 2d 258, ¶ 1. The court of appeals concluded that under § 402.714(2), the proper measure of damages for breach of warranty is the difference between the value of goods as accepted and the value as warranted at the time and place of acceptance. *Id.,* ¶ 10. The court stated that the evidence demonstrated that the warranted value of the vehicle was $18,000 and that Mayberry's own testimony as to the actual value of the car was sufficient to survive summary judgment. *Id.,* ¶¶ 11–12. The court of appeals also noted that Volkswagen might be entitled to an offset for the mileage Mayberry put on the vehicle under the "special circumstances" clause of Wis. Stat. § 402.714(2). *Id.,* ¶ 13 n.3. Therefore, the court of appeals reversed the circuit court order for summary

court never actually analyzed whether Volkswagen breached either its written warranty or its implied warranty of merchantability.

judgment because the circuit court failed to apply the correct measure of damages in Wis. Stat. § 402.714(2) and a genuine issue of material fact existed regarding damages insomuch as Mayberry had provided testimony as to the actual value of the vehicle and Volkswagen had "offered evidence suggesting 'proximate damages of a different amount.'" *Id.,* ¶ 15.

## IV. STANDARD OF REVIEW

¶ 15. This court reviews a circuit court's decision granting summary judgment independently, but we apply the same methodology as the circuit court. *Smaxwell v. Bayard,* 2004 WI 101, ¶ 12, 274 Wis. 2d 278, 682 N.W.2d 923. Pursuant to Wis. Stat. § 802.08(2), summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Therefore, "[s]ummary judgment should not be granted, 'unless the facts presented conclusively show that the plaintiff's action has no merit and cannot be maintained.'" *Smaxwell,* 274 Wis. 2d 278, ¶ 12 (quoting *Goelz v. City of Milwaukee,* 10 Wis. 2d 491, 495, 103 N.W.2d 551 (1960)). In determining whether summary judgment was appropriately granted, "[w]e view the summary judgment materials in the light most favorable to the nonmoving party." *Id.*

## V. ANALYSIS

¶ 16. This is a breach of warranty action under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. Mayberry filed suit under 15 U.S.C.

49

§ 2310(d)(1), which allows a consumer to bring suit against a warrantor in any state for failure to comply with its obligations under a written warranty or implied warranty. Mayberry alleged that Volkswagen failed to comply with its written warranty.[8] In addition, Mayberry claimed that Volkswagen breached its implied warranty under 15 U.S.C. §§ 2301(7) & 2308.[9] Pursuant to 15 U.S.C. § 2310(d)(1)(A) and 15 U.S.C. § 2311(b)(1), state law governs the appropriate measure of damages for breach of warranty under the Magnuson-Moss Act. *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979).[10]

¶ 17. We begin by noting that we are not presented with any issue concerning whether Volkswagen actually breached any of its warranties in this case.

---

[8] The parties agree that the court of appeals incorrectly stated that 15 U.S.C. § 2304(a) applies to this case. *Mayberry v. Volkswagen of America, Inc.*, 2004 WI App 64, ¶ 8, 271 Wis. 2d 258, 678 N.W.2d 357. The federal minimum standards for warranties provided in § 2304(a) apply only to full warranties. *See* 15 U.S.C. §§ 2303(a) & 2304(a). The parties agree that the written warranty at issue in this case is a limited warranty, and is therefore not subject to the federal minimum standards provided in § 2304(a).

[9] Except where otherwise provided, the Magnuson-Moss Warranty Act requires application of state law governing written and implied warranties. *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986). From the consumer's perspective, the chief advantage of proceeding under the Magnuson-Moss Act for breach of limited warranty or breach of implied warranty is the availability of attorney fees to a prevailing consumer under 15 U.S.C. § 2310(d)(2).

[10] *See also Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983); *Novosel v. Northway Motor Car Corp.*, 460 F.Supp. 541, 545 (N.D.N.Y. 1978); *Murphy v. Mallard Coach Co.*, 582 N.Y.S.2d 528, 532 (N.Y. App. Div. 1992).

Rather, the appeal concerns only the issue of what measure of damages is appropriate in this case. Thus, for purposes of this appeal, we will assume that Mayberry's allegations regarding Volkswagen's breach of warranties are true.

¶ 18. Wisconsin's Uniform Commercial Code governs the remedies available for transactions involving the sale of goods. Wisconsin Stat. § 402.714(2),[11] governing a buyer's damages for breach of warranty, provides:

> The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

Wis. Stat. § 402.714(2).

¶ 19. Volkswagen argues that while § 402.714(2) provides that the usual means for calculating damages for breach of warranty is the difference in value at the time and place of acceptance between the product as warranted and the product as received, the statute specifically allows for an alternate damage calculation when special circumstances show proximate damages in a different amount. Volkswagen contends that special circumstances are present here because under the standard calculation, Mayberry would reap a windfall, as Volkswagen repaired the vehicle free of charge under the warranty, Mayberry was able to use the vehicle for a substantial period of time, and Mayberry later resold the vehicle for more than its fair market value. Volks-

---

[11] Wisconsin Stat. § 402.714 is identical to § 2–714 of the Uniform Commercial Code. Uniform Law Note, Wis. Stat. Ann. § 402.714 (West 2003). *See* U.C.C. § 2–714(2)(1962).

wagen points to a series of cases that allow damages to be calculated at the time and place of replacement and asserts that we should follow the Illinois Court of Appeals' decision in *Valenti,* which held that a consumer cannot prove damages when she resells the vehicle for more than its fair market value. Volkswagen contends that because Mayberry received more than fair market value for the Jetta on resale, she has no damages and thus has no case.

¶ 20. In contrast, Mayberry argues that we should follow the default rule for calculating damages as contained in § 402.714(2). Mayberry states that *Valenti* has been overruled by *Bartow v. Ford Motor Co.,* 794 N.E.2d 1027 (Ill. App. Ct. 2003), and conflicts with the language of § 402.714(2). Further, Mayberry asserts that the special circumstances clause is applicable only where the standard method for calculating damages is insufficient to compensate the plaintiff for her loss or the goods in question are unique with no ready market. Mayberry states that Volkswagen is attempting to turn the special circumstances clause on its head and use it to preclude her from any recovery. Mayberry notes that she presented a prima facie case of damages by presenting evidence of the value of the vehicle as warranted (its purchase price) and testified as to the actual value of the vehicle at the time and place of acceptance. Thus, the crux of the dispute before us is the interpretation of the "special circumstances" language contained in § 402.714(2) and what effect, if any, a purchaser's use and subsequent resale of an allegedly defective vehicle has on the her ability to recover damages.

¶ 21. For purposes of construction, Wis. Stat. § 401.102(1) directs that "[c]hapters 401 to 411 shall be liberally construed and applied to promote its underlying purposes and policies." One of the driving underly-

ing policies of the Uniform Commercial Code is "[t]o make uniform the law among the various jurisdictions." Wis. Stat. § 401.102(2)(c). Regarding remedies, Wis. Stat. § 401.106(1) provides: "The remedies provided by chs. 401 to 411 shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed . . . ."

¶ 22. In addition, the Official Comments to the Uniform Commercial Code § 2–714 explain that "[i]n general this section adopts the rule of the prior uniform statutory provision for measuring damages where there has been a breach of warranty as to goods accepted, but goes further to lay down an explicit provision as to the time and place for determining the loss." Official Comment 1 U.C.C. § 2–714 (1962).[12] Moreover, "[s]ubsection (2) describes the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty but it is not intended as an exclusive measure." Official Comment 3, U.C.C. § 2–714 (1962).

¶ 23. Further, as one court has explained:

> The measure of damages in section [2–714(2)] has been referred to as "direct economic loss." Such losses are "damage flowing directly from insufficient product quality." So they include "ordinary loss of bargain damages: the difference between the actual value of the goods accepted and the value they would have had if they had been as warranted."

---

[12] The official comments to the Uniform Commercial Code are reproduced in the Wisconsin Statutes Annotated. Uniform Commercial Code Comments, Wis. Stat. Ann. § 402.714 (West 2003). The "official comments are indispensable to an understanding of the objectives and purposes of the Uniform Commercial Code and the substantive changes effected in the law." Acknowledgment: Uniform Commercial Code Comments, Wis. Stat. Ann. xi (West 2003).

*Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.*, 526 N.W.2d 305, 309 (Iowa 1995) (quoting James J. White & Robert S. Summers, *Uniform Commercial Code* § 11–5, at 536 (3d ed. 1988)).

¶ 24. It is with this understanding of the Uniform Commercial Code that we address the parties' arguments. The core of Volkswagen's argument is that special circumstances are present when an automobile purchaser uses the vehicle for an extended period of time, the manufacturer makes numerous repairs free of charge under its warranty, and the consumer later resells it for more than its fair market value. According to Volkswagen, under these circumstances, damages should be calculated based on the actual value and fair market value of the vehicle at the time of resale. Volkswagen relies principally on the *Valenti* decision for this proposition.[13]

¶ 25. *Valenti* involved a fact scenario very similar to the case at bar. There, the plaintiff purchased a new vehicle with a limited warranty and began experiencing problems with it shortly after she took possession. *Valenti*, 773 N.E.2d at 1200–01. She later brought suit under the Magnuson-Moss Warranty Act for breach of express and implied warranties after the vehicle was taken in for service on several occasions. *Id.*[14] The plaintiff subsequently sold the vehicle and the circuit court granted summary judgment on this basis. *Id.* at 1201–02.

---

[13] Because the question presented is an issue of first impression in Wisconsin and the Uniform Commercial Code seeks uniformity in the application of its provisions, it is appropriate to turn to case law from other jurisdictions addressing the issue.

[14] At oral argument, plaintiff's counsel indicated that he handled the appeal in *Valenti v. Mitsubishi Motor Sales of America, Inc.*, 773 N.E.2d 1199 (Ill. App. Ct. 2002).

¶ 26. On appeal, the Illinois Appellate Court noted that the uncontested evidence indicated that the plaintiff had received more than fair market value for the vehicle. *Id.* at 1202. The appellate court, in upholding the grant of summary judgment, stated that the plaintiff was required to prove damages with reasonable certainty and ruled: "Plaintiff here cannot meet this burden where the undisputed facts show that plaintiff sold the car at its fair market value, despite the alleged defect of which she now complains." *Id.* at 1203.

¶ 27. Mayberry asserts that *Valenti* was overruled by the Illinois Appellate Court in *Bartow.* In *Bartow,* another Magnuson-Moss Warranty Act case, the defendant contended that the plaintiff lacked standing to maintain a claim under the Magnuson-Moss Warranty Act because she resold the vehicle and its warranty prior to filing suit. *Bartow,* 794 N.E.2d at 1028–29. The Illinois Appellate Court ultimately rejected "the defendant's assertion that resale of the object at issue precludes a buyer from suing for breach of warranty . . . ." *Id.* at 1037.

¶ 28. We are not persuaded that the *Bartow* decision is controlling in this case. The only issue in *Bartow* was "whether the plaintiff had *standing to bring her cause of action* . . . ." *Id.* at 1029. The court never mentioned the *Valenti* decision and did not address whether resale of a vehicle qualifies as a special circumstance under U.C.C. § 2–714(2) sufficient to deviate from the standard calculation of damages.

¶ 29. However, ultimately, we are not persuaded by the rationale of *Valenti* either. First, in *Valenti,* the appellate court never discussed the "special circumstances" language contained in U.C.C. § 2–714(2). In addition, the court stated that damages for a breach of warranty claim are calculated "on the date of the

breach." *Valenti,* 773 N.E.2d at 1203. This statement is contrary to U.C.C. § 2–714(2), which provides that damages are calculated at the time and place of acceptance. Thus, the *Valenti* decision was not applying the pertinent language of the Uniform Commercial Code at issue in this case. More importantly, unlike the plaintiff in the present case, the plaintiff in *Valenti* maintained that she did not have to show damages at the summary judgment stage and provided no evidence of the actual value of the vehicle at the time and place of acceptance. *Id.* at 1202–03.[15]

¶ 30. These unique facts of *Valenti* were recognized in *Cohen v. AM General Corp.,* 264 F.Supp.2d 616 (N.D. Ill. 2003). In *Cohen,* the plaintiffs leased a new Hummer for $84,000 and brought suit under the Magnuson-Moss Warranty Act for breach of warranty after experiencing problems with the vehicle. *Id.* at 618. After filing suit, and three years after signing the lease, the plaintiffs traded in the vehicle and received $49,000. *Id.* The defendant, relying on *Valenti,* argued that the plaintiffs could not prove damages because they sold the vehicle for fair market value. *Id.* at 621. The court disagreed and distinguished *Valenti* on the basis that the plaintiff in *Valenti* never alleged that the vehicle was defective from the moment she took possession. *Id.* at 621–22. The court held that the proper measure of damages was the difference in value at the

---

[15] For the same reason, we do not find *Price v. Chevrolet Motor Division of General Motors Corp.,* 765 A.2d 800 (Pa. Super. Ct. 2000), to be persuasive. In *Price,* the plaintiff "provided absolutely no evidence as to the vehicle's present value, or to its actual value when it was delivered to her in the alleged defective condition . . . Rather, the sole evidence [the plaintiff] introduced as to damages was [the plaintiff's] sales agreement." *Id.* at 811.

time plaintiffs accepted the vehicle. *Id.* at 622. The court stated that the fact the plaintiffs were able to trade in the vehicle for its fair market value merely created an issue of material fact as to the quality of the vehicle at the time of acceptance. *Id.* However, despite the similarities with the present case, the *Cohen* court, as in *Valenti* and *Bartow,* did not address the applicable Uniform Commercial Code language and did not consider whether the plaintiffs' use of the vehicle and subsequent resale constituted a "special circumstance."

¶ 31. Volkswagen also relies on *Harlan v. Smith,* 507 So.2d 943 (Ala. Civ. App. 1986). In *Harlan,* the plaintiff purchased a used mobile home and filed suit against the seller after discovering numerous defects over the course of several weeks. *Id.* at 944. The defendant moved for summary judgment on the ground that the plaintiff submitted insufficient evidence of damages to support his breach of warranty claim because he failed to introduce evidence of the difference in value of the mobile home at the time and place of acceptance. *Id.* at 944–45. The court noted that under Alabama's Uniform Commercial Code, the measure of damages in a breach of warranty action is the difference in value between the goods as warranted and the actual value at the time and place of acceptance and that failure to introduce evidence regarding the difference in value bars the claim. *Id.* at 945. The court stated that while the plaintiff did not present evidence as to the actual value of the mobile home the day it was accepted, he presented his opinion as to what the mobile home was worth after he discovered all of the defects six weeks later. *Id.* The court held that the plaintiff's use of the mobile home without notice of the defects constituted a special circumstance that took the case outside the normal time and place of acceptance measure of

damages and that therefore the plaintiff presented sufficient legal evidence as to the amount of damages. *Id.*

¶ 32. Because the court in *Harlan* utilized the "special circumstances" exception to *allow* the plaintiff to recover, this decision is not helpful to Volkswagen's position. *Harlan* did not construe the "special circumstances" exception in a manner that would bar the plaintiff from maintaining a claim. *Harlan* does not stand for the proposition that damages may be calculated based on the difference in market value of the product and its actual price at the time and place of resale.

¶ 33. Volkswagen also cites to a number of cases involving breach of warranty of title for the proposition that when a purchaser uses an automobile for a significant period of time, special circumstances are present and damages may be calculated based on the difference in value at the time the plaintiff is dispossessed of the vehicle. Petr's Br. at 25. However, breach of warranty of title cases present unique concerns not present in most breach of warranty cases. Therefore, we believe the rule utilized in breach of warranty of title cases is inapplicable here.

¶ 34. Under the standard damage calculation in a breach of warranty of title case, the value of the vehicle as warranted is generally the purchase price, and the actual value of the vehicle as accepted is zero because of the defective title. Courts hold that special circumstances exist in these cases and it is appropriate to calculate damages based on the value of the goods at the time of dispossession "because it would be unjust to allow the purchaser unfettered use and possession of the goods for a substantial period of time and *then allow recovery of the full purchase price paid for the goods.*"

*Canterra Petroleum, Inc. v. Western Drilling and Mining Supply,* 418 N.W.2d 267, 275 (N.D. 1987) (emphasis added). Thus, the rule in breach of warranty of title cases is premised on a concern over allowing the plaintiff to completely undo the transaction, recover the full purchase price, and receive the additional benefit of substantial use of the vehicle. *See* Roy Anderson, 1 *Damages Under UCC* § 10:12, at 10–57 to 10–58 (2003). In essence, courts conclude that plaintiffs would receive a windfall if they were able to use the vehicle for a substantial period of time and yet obtain a full refund of the purchase price of the vehicle.

¶ 35. This concern is not present in the current case. Utilizing the standard measure for calculating damages in the present case would not result in Mayberry recovering the full purchase price of the vehicle. In breach of warranty of title cases, the product has no actual value to the consumer because the consumer does not legally own the vehicle. Here, Mayberry is merely seeking to recover the diminished value of the vehicle due to its defective condition. Mayberry does not allege that the Jetta was valueless to her at the time of acceptance; rather, she alleges she paid too much for the vehicle given its defective condition. Taking the consumer's use of the vehicle into account when calculating damages makes sense when there is a defective title and the consumer is essentially seeking to undo the transaction; however, when a consumer is merely seeking benefit of the bargain damages, her use of the vehicle has no bearing on the question.

¶ 36. As such, we have found no authority that stands for the proposition that the proper measure of damages under the Uniform Commercial Code is the difference between the market value and actual price of

the defective product at the time and place of resale when the plaintiff alleges a breach of the manufacturer's written warranty and implied warranty of merchantability. Breach of contract remedies under the Uniform Commercial Code are designed to put the aggrieved party "in as good a position as if the other party had fully performed." Wis. Stat. § 401.106(1). Section 2–714 of the Uniform Commercial Code is designed to compensate " 'damage flowing directly from insufficient product quality.' " *Beyond the Garden Gate,* 526 N.W.2d at 309 (quoting James J. White & Robert S. Summers, *Uniform Commercial Code* § 11–5, at 536 (3d ed. 1988)).

■

¶ 37. Mayberry has alleged that she suffered damages because her vehicle was defective when she accepted it and she did not receive a vehicle of the quality for which she paid. The fact that Mayberry later resold the vehicle for more than its fair market value does not totally negate the fact that she did not receive the benefit of her bargain. While the amount of profit realized on the resale may be relevant to the issue of mitigation, construing the "special circumstances" clause of § 402.714(2) to completely bar the plaintiff from maintaining a claim would defeat the manifest purpose of the remedies under the Uniform Commercial Code, which are to compensate the plaintiff for her direct economic loss and place her in as good a position as if the seller had fully performed.

¶ 38. Therefore, we hold that pursuant to Wis. Stat. § 402.714(2), the appropriate method for measuring damages in this case is the difference between the warranted value of the vehicle in question and its actual value at the time and place of acceptance. Further, we

conclude that Mayberry has established a prima facie case of damages sufficient to survive summary judgment under this standard.

■

¶ 39. The standard measure of damages under § 402.714(2) requires evidence of two values: (1) the value of the product as warranted at the time and place of acceptance and (2) the actual value of the vehicle with defects at the time and place of acceptance. As to the first value, courts generally hold that the contract price is relevant but not conclusive evidence of the value of the goods as warranted at the time and place of acceptance. *Mulvaney v. Tri State Truck & Auto Body Inc.*, 70 Wis. 2d 760, 769, 235 N.W.2d 460 (1975). *See also K & C, Inc. v. Westinghouse Elec. Corp.*, 263 A.2d 390, 394 (Pa. 1970) (ruling that purchase price of goods is "prima facie evidence" of the value of the goods as warranted but not conclusive because purchaser may have struck a good or bad bargain); *Carlson v. Rysavy*, 262 N.W.2d 27, 31 (S.D. 1978) (contract price is "strong evidence" of the value of goods as warranted but not conclusive); *Lone Star Ford, Inc. v. McGlashan*, 681 S.W.2d 720, 725 (Tex. Ct. App. 1984) (sales price is sufficient evidence as to the market value of goods as warranted in absence of other evidence); James J. White & Robert S. Summers, 1 *Uniform Commercial Code* § 10–2, at 557 (4th ed. 1995) ("[T]he purchase price of the damaged goods may be the best evidence of the value of the goods as warranted.").[16]

---

[16] However,

Since the contract price is often negotiated long before the time of acceptance, fair market value at the time of acceptance provides the more accurate measure of value as warranted under 2–714(2). Use of fair market value at the time of acceptance gives a buyer the

¶ 40. The record in the present case contains a copy of the sales contract for the Jetta that indicates the cash price of the vehicle was $17,800 and that after taxes and fees the price came to $18,526. In addition, Mayberry alleged in her complaint that after finance charges, the total cost of the Jetta was $22,548. The parties dispute which figure—$17,800, $18,526, or $22,548—correctly represents the value of the Jetta as warranted. This issue is not directly before us and therefore we do not directly address it.[17] Because the record contains evidence of the purchase price of the vehicle, Mayberry has presented sufficient evidence of the value of the vehicle as warranted at the time and place of acceptance.

¶ 41. As to the second value—the actual value of the vehicle with defects at the time and place of

---

benefit of a good bargain (when the market price has risen above the contract price), but prevents the buyer from recovering the cost of a bad bargain (when the market price has fallen below the contract price).

James J. White & Robert S. Summers, 1 *Uniform Commercial Code* § 10–2, at 557 n.13 (4th ed. 1995).

[17] *But see* James J. White & Robert S. Summers, 1 *Uniform Commercial Code* § 10–2, at 557 n.15 (4th ed. 1995) ("The contract price used as evidence of value as warranted should be the cash price of the goods, not a "credit price" that includes finance charges. Finance charges merely represent the cost of money and do not increase the value of the goods.") (citing *Long v. Quality Mobile Home Brokers, Inc.*, 248 S.E.2d 311, 312–13 (S.C. 1978)). "[M]ost courts have restricted the evidence to the cash price of goods. Whenever finance charges are to be allowed as compensable damages, they should be considered consequential damages subject to the specific requirements in Section 2–715(2) for the recovery of such damages." Roy Anderson, 1 *Damages Under UCC* § 10:7, at 10–35 (2003).

acceptance—Mayberry submitted an affidavit stating that she believed the value of the Jetta with all of its defects was only $12,526. Volkswagen challenges whether this constitutes sufficient evidence of the actual value of the vehicle to survive summary judgment.

■

¶ 42. Wisconsin case law is clear that an owner of property may testify as to its value and that such testimony may properly support a jury verdict for damages, even though the opinion is not corroborated or based on independent factual data. *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 323–24, 475 N.W.2d 587 (Ct. App. 1991). In *D'Huyvetter*, the court stated:

> The only evidence plaintiffs produced regarding the *actual value* of the Harvestore at the time of purchase was . . . [the plaintiff's] testimony that, in her opinion, the Harvestore was worth "nothing." In Wisconsin, the general rule is that a non-expert owner may testify concerning the value of their property, regardless of whether it is realty or personalty. . . . The weight to be attached to a non-expert owner's testimony is for the trier of fact. . . . We conclude that plaintiffs produced credible evidence at trial to establish that the . . . value of the Harvestore system at the time of purchase was $0.

*Id.* (emphasis in original).[18] Thus, under Wisconsin law, Mayberry's opinion as to the actual value of her car on the date of acceptance is sufficient to survive summary

---

[18] *See also Wilberscheid v. Wilberscheid,* 77 Wis. 2d 40, 48, 252 N.W.2d 76 (1977); *Park Falls Lumber Co. v. Stauber,* 190 Wis. 310, 315, 207 N.W. 409 (1926); *Arneson v. Arneson,* 120 Wis. 2d 236, 252, 355 N.W.2d 16 (Ct. App. 1984).

judgment.[19] Volkswagen's complaints bear upon the weight and credibility of Mayberry's opinion, not its legal sufficiency.

¶ 43. While Mayberry's opinion as to the value of her vehicle may be sufficient for her to survive summary judgment, it does not necessarily follow that it will be persuasive to a jury. Although we have held that the fact that Mayberry traded in her vehicle for more than fair market value does not bar her claim, the price she obtained for the Jetta at resale may be probative as to the value of the vehicle with defects at the time and place of acceptance. A reasonable jury could conclude that her testimony that the vehicle was worth only $12,526 at the time of acceptance is inherently incredible, given that the vehicle was sold two years and 30,000 miles later for $15,100.

¶ 44. Numerous courts and commentators have recognized that the price obtained for defective goods on resale is probative as to the value of the goods actually received. *See, e.g., HCI Chems. (USA), Inc. v. Henkel KGaA,* 966 F.2d 1018, 1024 (5th Cir. 1992); *Cohen,* 264 F.Supp.2d at 622; *Bergenstock v. Lemay's G.M.C., Inc.,* 372 A.2d 69, 75 (R.I. 1977); *ITT-Indus.*

---

[19] *See also Razor v. Hyundai Motor Am.,* 813 N.E.2d 247, 256–57 (Ill. App. Ct. 2004) (where plaintiff testified as to purchase price of car and chronic problems, jury could award damages based on its own experience and her testimony that the value of the car she received was less than the value of the vehicle she thought she was buying). *Don Meadow Motors, Inc. v. Grauman,* 446 N.E.2d 651, 654 (Ind. App. Ct. 1983) (evidence was sufficient to support jury's award where plaintiff testified that he purchased vehicle for $8214 but, due to defects, he believed it was worth only $4000 at the time of purchase under state rule allowing owner of property to testify as to its value).

*Credit Co. v. Milo Concrete Co.,* 229 S.E.2d 814, 822 (N.C. Ct. App. 1976); James J. White & Robert S. Summers, 1 *Uniform Commercial Code* § 10–2, at 558 (4th ed. 1995). Thus:

> Where the buyer sells a defective article, using reasonable care in doing so to secure the best price, the price so received may be used in determining the value of the article in its defective condition for the purpose of determining the amount of the buyer's damages. Evidence of such resale price is admissible to prove the value of the defective article, and such evidence could be sufficient proof of such value in ascertaining the buyer's damages as measured by the difference between such value and the value the article would have had if it had been as warranted.

67A Am. Jur. 2d. *Sales* § 1145, at 555 (2003).

## VI. CONCLUSION

¶ 45. We hold that pursuant to Wis. Stat. § 402.714(2), the appropriate method for measuring damages in this case is the difference between the warranted value of the vehicle in question and its actual value at the time and place of acceptance. When the plaintiff has established a prima facie case of damages under this standard, the "special circumstances" clause of § 402.714(2) should not be construed so as to completely bar her breach of warranty claim simply because she used the defective product for a period of time and later resold it for more than its fair market value. We have found no authority that stands for the proposition that the proper measure of damages under the Uniform Commercial Code in such circumstances is the difference between the market value and actual price obtained for the defective product at the time and place of resale. However, the price of the defective product upon

resale may be relevant insomuch as it constitutes circumstantial evidence of the actual value of the product in its defective condition at the time and place of acceptance.

¶ 46. Because the circuit court applied an incorrect standard for measuring damages, we affirm the decision of the court of appeals reversing the circuit court's order of summary judgment.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 47. JON P. WILCOX, J. (*concurring*). I write separately because while I agree that the "special circumstances" clause of Wis. Stat. § 402.714(2)[1] may not be used to bar Mayberry's claim by calculating damages based on the difference between the market value and actual price of her vehicle at resale, the "special circumstances" clause of § 402.714(2) is still relevant to this case.

¶ 48. Despite Volkswagen's attempt to sustain the circuit court's order for summary judgment, what the parties are really arguing over is the *amount* of Mayberry's damages. Volkswagen is concerned that the standard method for calculating damages under § 402.714(2) will allow Mayberry to reap a windfall because her actual damages are less than the difference between the warranted value of the Jetta and actual value of the Jetta at the time and place of acceptance. Volkswagen argues that the standard measure for calculating damages cannot be an inflexible rule because Mayberry has mitigated her damages and thus has actual damages of a different amount. Volkswagen's concerns do not fall on deaf ears.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

¶ 49. While I wholeheartedly agree with the majority that the "special circumstances" clause of § 402.714(2) should not be construed to completely bar a plaintiff from maintaining a claim, I would further hold, in accordance with the numerous authorities that have addressed the issue, that the "special circumstances" clause of § 402.714(2) may be utilized to adjust a plaintiff's damages—as calculated under the difference in value at acceptance standard—to reflect any damages mitigated by the plaintiff. In other words, I would hold that while the difference between the warranted value and actual value at the time and place of acceptance is the "starting point" for calculating damages, this figure may be adjusted upwards or downwards in appropriate circumstances to reflect the actual amount of plaintiff's damages under the "special circumstances" clause of § 402.714(2).

¶ 50. Wisconsin Stat. § 402.714(2) provides that a court may deviate from the standard method of calculating damages for breach of warranty if "special circumstances show proximate damages of a different amount." Both courts and commentators have recognized that this clause of the Uniform Commercial Code allows damages calculated under the standard time and place of acceptance measure to be adjusted upward or downward if the plaintiff's actual damages are different than the default difference in value calculation. *See, e.g., Neilson Bus. Equip. Center, Inc. v. Monteleone,* 524 A.2d 1172, 1176 (Del. 1987); *Vorthman v. Myers Enters.,* 296 N.W.2d 772, 777 (Iowa 1980); Ronald A. Anderson, 4A *Anderson on the Uniform Commercial Code* § 2–714:199 to § 2–714:224 (3d. ed. rev. vol. 4A 1997).

¶ 51. As the court in *Vorthman* explained, "the present standard [under the U.C.C.] is to allow *either* more or less than the difference between the value of

the property as it should have been and as it actually was. *This conforms to the basic principle that damages should compensate for the loss actually suffered." Vorthman,* 296 N.W.2d at 777 (second emphasis added). *See also* Roy Anderson, 1 *Damages Under UCC* § 10:10, at 10–46 (2003) ("The 'special circumstances' exception may justify an award of lesser as well as greater damages than would be allowed by the difference in value formula."). In *Vorthman,* the court emphasized that the "special circumstances" clause applies where actual damages are of a *different*—as opposed to a *greater*—amount than the standard measure. *Vorthman,* 296 N.W.2d at 777.[2]

¶ 52. One recognized category of cases in which the plaintiff's damages may be adjusted downward from the standard difference in value formulation is *"where the buyer has mitigated damages to less than those provided by the value differential formula."* Roy Anderson, 1 *Damages Under UCC* § 10:10, at 10–47 (2003) (emphasis added). Thus:

> Circumstances may exist in which the buyer is fully indemnified although the buyer does not obtain the full recovery authorized by UCC § 2–714. In such case, the

---

[2] Relying on *City of New York v. Pullman Inc.,* 662 F.2d 910, 912–13 (2d Cir. 1981), Mayberry asserts that the "special circumstances" clause of Wis. Stat. § 402.714(2) may be utilized only if a plaintiff's damages are *greater* than the difference between the warranted value of the product and actual value of the product at the time and place of acceptance or if the goods at issue are custom goods with no ready market. However, in *Pullman,* the court merely concluded that special circumstances existed where custom goods were involved and the plaintiff would not be fully compensated for its loss under the standard measure for calculating damages. *Id.* at 916–18. *Pullman* did not conclude that these are the *only* two situations in which the "special circumstances" clause is applicable.

buyer will not be allowed to recover the damages authorized by the Code but only so much as is required to indemnify the buyer for his or her actual loss.

Ronald A. Anderson, 4A *Anderson on the Uniform Commercial Code* § 2–714:219, at 487 (3d ed. rev. vol. 4A 1997).

¶ 53. This application of "special circumstances" is consistent with the purpose underlying the remedies in the Uniform Commercial Code, which is to place the aggrieved party "in as good a position as if the other party had fully performed." Wis. Stat. § 401.106(1). As noted by the majority, majority op., ¶¶ 22–24, the remedies under the Uniform Commercial Code for breach of warranty are designed to compensate an injured party for her "direct economic loss." *Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.,* 526 N.W.2d 305, 309 (Iowa 1995) (quoting James J. White & Robert S. Summers, *Uniform Commercial Code* § 11–5, at 536 (3d ed. 1988)). In other words, under the Uniform Commercial Code " 'an injured party should be fully compensated for losses suffered through the fault of another, *but . . . he should not be allowed a windfall.*' " James J. White & Robert S. Summers, 1 *Uniform Commercial Code* § 10–2, at 555–56 (4th ed. 1995) (quoting *Cmty. Television Servs., Inc. v. Dresser Indus., Inc.,* 435 F. Supp. 214, 217 (D.S.D. 1977)) (emphasis added). The plaintiff is entitled to be compensated for her actual damages, no more, no less. As such, § 1–106 of the Uniform Commercial Code "requires mitigation of damages." *Cates v. Morgan Portable Bldg. Corp.,* 780 F.2d 683, 688 (7th Cir. 1985).

¶ 54. Allowing a deduction for damages that have been mitigated is also consistent with Wis. Stat. § 402.714(1), which states that damages may be "deter-

mined in any manner which is reasonable." In addition, the Official Comments to the Uniform Commercial Code specifically provide: "Subsection (2) . . . is not intended as an exclusive measure" of damages. Official Comment 3, *Uniform Commercial Code* § 2–714(2) (1962). As one commentator has recognized, "[t]he effect of the [special circumstances] exception is to . . . allow the court the flexibility to fashion a damages award 'in any manner which is reasonable' as provided by subsection (1)." Roy Anderson, 1 *Damages Under UCC* § 10:10, at 10–45 (2003). It is perfectly reasonable and in accordance with prevailing law to adjust a plaintiff's damages so that she does not recover damages that she avoided pursuant to her duty to mitigate. Indeed, a contrary holding would be patently unreasonable in light of the plaintiff's obligation to mitigate damages.

¶ 55. As the court of appeals has recently explained:

> The party alleging breach of the contract has a duty to mitigate damages, that is, "to use reasonable means under the circumstances to avoid or minimize the damages." *See Kuhlman, Inc. v. G. Heileman Brew. Co.,* 83 Wis. 2d 749, 752, 266 N.W.2d 382 (1978); Wis JI—Civil 1731. An injured party cannot recover any item of damage that could have been, or was, avoided. *See Kuhlman,* 83 Wis. 2d at 752 . . . .

*Kramer v. Bd. of Educ. of the Sch. Dist. of the Menomonie Area,* 2001 WI App 244, ¶ 13, 248 Wis. 2d 333, 635 N.W.2d 857. This court has held that under general principles of contract law, "[a]n injured party is entitled to the benefit of his agreement, which is the net gain he would have realized from the contract but for the failure of the other party to perform." *Thorp Sales Corp. v. Gyuro Grading Co.,* 111 Wis. 2d 431, 438–39, 331

N.W.2d 342 (1983). However, we have specifically stated: *"A party is not entitled to be placed in a better position because of a breach than he would have if the contract had been performed." Hanz Trucking, Inc. v. Harris Bros. Co.,* 29 Wis. 2d 254, 268, 138 N.W.2d 238 (1965) (emphasis added). *See also Kramer,* 248 Wis. 2d 333, ¶ 13.

¶ 56. One instance in which courts have recognized that a party has mitigated damages for breach of warranty under the Uniform Commercial Code is where the buyer resells the defective goods for a profit: "When the buyer sues the seller for warranty damages, the general rule specified by the Code for the measurement of the damages must be modified by deducting the profits made on resale." Ronald A. Anderson, 4A *Anderson on the Uniform Commercial Code* § 2–714:223, at 488 (3d ed. rev. vol. 4A 1997). In *Vorthman,* 296 N.W.2d at 778, the court held that the damage instruction in the case before it constituted reversible error because it did not allow for the damage award to be adjusted to reflect the profit the plaintiff received upon resale of the defective goods at issue. *See also Lackawanna Leather Co. v. Martin & Stewart, Ltd.,* 730 F.2d 1197, 1203 (8th Cir. 1984) (ruling that a jury properly awarded damages in breach of warranty case under Uniform Commercial Code § 2–714 for defective cattle hides by reducing damages to reflect plaintiff's profit in resale of the goods); *Ducheneaux v. Miller,* 488 N.W.2d 902, 916 (S.D. 1992) (circuit court erred in failing to reduce plaintiff's damages by amount of profit plaintiff received upon resale of defective calves); *Schmaltz v. Nissen,* 431 N.W.2d 657, 664 (S.D. 1988) (holding it was proper under South Dakota's Uniform Commercial Code to reduce plaintiff's damages to reflect profit plaintiff made upon resale of

71

inferior quality seed); *Holm v. Hansen,* 248 N.W.2d 503, 510–11 (Iowa 1976) (ruling that where damages were to be calculated under "special circumstances" clause of Uniform Commercial Code, circuit court was required on remand to consider profits plaintiff received upon resale of defective livestock).

¶ 57. Here, in an attempt to mitigate her damages, Mayberry resold the vehicle to another dealer for $15,100. However, Mayberry conceded that the fair market value of the vehicle at the time of trade-in was $14,200. Thus, assuming Mayberry is successful in convincing a jury that Volkswagen breached its warranties and that she suffered damages, Mayberry's damages should be reduced to reflect the net profit she obtained as a result of the resale of the vehicle.[3] If this amount were not deducted from Mayberry's damages, the duty to mitigate would be meaningless. While Mayberry is entitled to the difference between the warranted value of the vehicle and its actual value at the time and place of acceptance, she mitigated these damages by selling the vehicle for a profit. If she were entitled to keep both the profit from the resale and the total benefit of the bargain damages, she would be placed in a better position than had the Jetta not been defective.

¶ 58. In addition, a consumer's damages may be reduced in a breach of warranty case to reflect any value added to the defective product as a result of successful repairs under the warranty. As one commentator has observed:

---

[3] Of course, it is left to the jury to decide whether $15,100 accurately reflects the price obtained for the vehicle at trade in, given the entire structure of the trade-in arrangement.

By definition, repairs made by the seller are not relevant to the claim of the buyer for damages under UCC § 2–714.

The buyer may not recover damages for defects that have been corrected by the seller pursuant to its warranty to repair. This result is achieved by awarding the plaintiff the difference in the fair market value of the goods and their condition at the time and place of acceptance, increased by the value of repairs and replacement made in compliance with the warranty, and the fair market value of the goods had they been as warranted.

Ronald A. Anderson, 4A *Anderson on the Uniform Commercial Code* § 2–714:131, at 452–53 (3d ed. rev. vol. 4A 1997). *See also* James J. White & Robert S. Summers, 1 *Uniform Commercial Code* § 10–2, at 555 (4th ed. 1995) (accord).

¶ 59. Thus, in *Stutts v. Green Ford, Inc.,* 267 S.E.2d 919, 926 (N.C. Ct. App. 1980), the court held that the "special circumstances" clause of the Uniform Commercial Code allowed for the plaintiff's damages to be reduced in light of the fact that the seller made numerous repairs to the vehicle in question under its warranty, and thereby increased the value of the vehicle. The court reasoned:

At the end of the warranty period, the only nonconformity of which plaintiff complains and of which there is evidence of defective parts or workmanship is the oil leakage. Under the special facts of this case, we hold, then that an appropriate measure of damages would be the difference in the fair market value of the truck in its condition at the time and place of acceptance, increased by the value of repairs and replacements made in compliance with the warranty, and its fair market value had it been as warranted. This, in effect, would permit plaintiff to recover damages compensating him for the

73

loss in value due to the persistent oil problem, while preventing him from receiving windfall damages for defects which were subsequently successfully repaired.

*Id.* (citation omitted).

¶ 60. Mayberry attempted to mitigate her damages by having the Jetta serviced under the warranty Volkswagen provided. Volkswagen made several repairs to the vehicle at no charge to Mayberry. While the record is silent as to whether Volkswagen ever successfully remedied the engine problem, it does seem that Volkswagen may have successfully rectified the other problems. Thus, Mayberry's damages should be reduced by any value that was added to the defective vehicle as a result of any successful repairs made by Volkswagen pursuant to the warranty. Mayberry should not be able to recover for repairs that were successfully made free of charge in compliance with the warranty.

¶ 61. As such, I would hold that pursuant to § 402.714(2), the starting point for calculating damages in this case is the difference in value at the time and place of acceptance, but that figure may be adjusted downward to take into account any damages that Mayberry mitigated under the "special circumstances" clause. I agree with the court of appeals that "based on the statutory measure of damages in § 402.714(2), a genuine issue of fact exists on the question of damages. Mayberry has offered evidence of the Jetta's value at the time and place of acceptance. Volkswagen, however, has offered evidence suggesting 'proximate damages of a different amount.' " *Mayberry v. Volkswagen of America,* 2004 WI App, ¶ 15, 271 Wis. 2d 258, 678 N.W.2d 357.

¶ 62. In sum, I would hold, consistent with the numerous cases and authorities that have considered the issue, that once the plaintiff has established a prima facie case of damages under the standard method of calculation in § 402.714(2), her damages may be reduced under the "special circumstances" clause of § 402.714(2) to reflect any damages she may have mitigated. That is, a plaintiff's damages, as calculated under the difference in value at acceptance standard, should be adjusted under the "special circumstances" clause to reflect the actual damages suffered. A plaintiff's damages should be reduced under the "special circumstances" clause of § 402.714(2) in the amount of any net profit the consumer obtained upon the resale of the vehicle. In addition, if the manufacturer made successful repairs to the vehicle under its warranty, the plaintiff's damages should be reduced to reflect the increased value of the vehicle as a result of such repairs. The plaintiff is entitled to the benefit of her bargain, no more, no less. Assuming Mayberry can establish the other prerequisites for liability, her damages, as calculated under § 402.714(2), should be adjusted to reflect any net profit she obtained as a result of the resale and any value added to the defective vehicle as a result of any successful repairs made by Volkswagen.

¶ 63. I am authorized to state that Justices DAVID T. PROSSER, JR. and PATIENCE D. ROGGENSACK join this opinion.